THE STATE OF OHIO, APPELLANT, *v.* CLARK, APPELLEE.

(No. 11-82-8—Decided June 22, 1983.)

*Mr. J. David Webb,* prosecuting attorney, and *Mr. R. Kelly Ormsby III,* for appellant.

*Mr. Russell J. McMaster,* for appellee.

COLE, J. This is a prosecutor's appeal pursuant to Crim. R. 12(J) from a motion to suppress that was granted in the County Court of Paulding County.

On May 27, 1982 the defendant-appellee, Charles Clark, was arrested by Officer Merritt, an auxiliary police officer of the Paulding Village Police Department, for violation of R.C. 4511.19, operating a vehicle while under the influence of alcohol. Merritt, dressed in uniform but seated in his personal, unmarked automobile at a local gas station, was waiting for further instructions from a full-time officer. While waiting for further instructions, Merritt observed defendant Clark driving erratically and proceeding left of center. Merritt, in his unmarked car, followed the defendant and attempted by C.B. radio to call a squad car to assist. Unable to get a response, the officer continued following Clark, and ultimately drove out of the village limits. The officer eventually forced Clark to stop his vehicle. Upon smelling a strong odor of alcohol, the officer informed Clark he was under arrest for driving under the influence of alcohol, a misdemeanor of the first degree.

The first and second assignments of error address the same issue and state, respectively:

"First Assignment of Error: The trial court erred in finding that patrolman Michael Merritt was not on duty at the time he observed the defendant-appellee, pursued him, stopped him and arrested him.

"Second Assignment of Error: The trial court erred in finding that the arrest

of the defendant-appellee was without authority and as such illegal."

Relative to these assignments of error the trial court stated:

"12. Rule 26 of the Supplement to the Paulding Police Department Rules and Regulations is invalid.

"13. Michael Merritt was not on duty at the time he observed the Defendant, pursued him, stopped him and placed him under arrest without a warrant.

"14. The arrest of the Defendant was without authority and as such was illegal."

The court concluded that the arrest was illegal because Merritt was not technically on duty.

The court found Police Rule 26, which was written by the police chief, to be without authority because only the appropriate legislative or executive body could draft such rules. We disagree with the court's analysis.

The question of whether the officer was on or off duty is irrelevant. The pertinent question, though not specifically presented on appeal, is whether Merritt is a duly appointed officer. See R.C. 737.161 and 715.05. R.C. 2935.03(A) states:

"(A) A sheriff, deputy sheriff, marshal, deputy marshal, police officer, or state university law enforcement officer appointed under section 3345.04 of the Revised Code shall arrest and detain until a warrant can be obtained a person found violating, within the limits of the political subdivision, college, or university in which the peace officer is appointed or elected, a law of this state or an ordinance of a municipal corporation."

The code makes no distinction as to the "duty status" of an officer. Paragraph two of the syllabus of 1974 Ohio Atty. Gen. Op. No. 74-094, at 2-382, states:

"An off-duty municipal police officer may, pursuant to R.C. 2935.03, arrest for a misdemeanor without a warrant only within the territorial jurisdiction in which he is appointed, which is the corporate limits of the municipality." (Emphasis added.)

In State v. Glover (1976), 52 Ohio App. 2d 35 [6 O.O.3d 20], an off-duty city policeman employed by Kroger Co. stopped a shoplifter and informed him he was under arrest. After the arrest, a scuffle ensued, and the defendant was also charged with resisting arrest. The court in affirming the resisting arrest conviction stated at 38:

"A duly commissioned police officer holds a public office upon a continuing basis. The officer here remained an officer of the law, and his obligation to preserve the peace was not nullified by the fact he was working for Kroger in this case."

In addition to the duty status argument, the appellee asserts that the auxiliary officer did not have authority or power to arrest. R.C. 2935.03. Appellee argues that the misdemeanor arrest was, in effect, a citizen's arrest, in contravention of R.C. 2935.04. Though R.C. 2935.03 does not specifically name auxiliary police officers as having power to arrest, the definitional section of R.C. 2901.01(K)(4) defines a "law enforcement officer" as:

"A member of an auxiliary police force organized by county, township, or municipal law enforcement authorities, within the scope of such member's appointment or commission;"

A law enforcement officer, which includes an auxiliary police officer, necessarily has the power to enforce the law. This power includes the *power* to arrest, depending, of course, on the scope of the appointment. R.C. 2901.01(K)(4) and 737.161. 1967 Ohio Atty. Gen. Op. No. 67-015, being on point, states at 2-29:

"Municipalities operating under a statutory form of government may designate the authority conferred upon auxiliary police in the ordinance creating the auxiliary police unit. I find nothing in the revised code which in my opinion

limits the authority with which a municipality may invest its auxiliary police, subject however to the limitations upon the authority of municipal police generally. A municipality may confer upon its auxiliary police such powers as are necessary under the circumstances to discharge the duties imposed upon them."

Village of Paulding Ordinance No. 648-48, passed pursuant to R.C. 737.161, sets out the powers and duties of the auxiliary police force. Section 4 of the ordinance, in part, states:

"Section 4. Control of Unit.

"The Chief of Police shall be the commanding officer of the auxiliary police unit and shall have control of the assignment, training, stationing, and the direction of work of such unit. The auxiliary police unit will have *all police powers,* but shall perform only such police duties as assigned by the Chief of Police and shall act only when in the prescribed uniform or portion of uniform." (Emphasis added.)

As we have noted Merritt was in uniform. We conclude that the auxiliary police force of Paulding was conferred full "police powers," and accordingly had the power, regardless of "duty status," to make arrests pursuant to the Revised Code, as well as the ordinances of the village of Paulding.

Additionally, though the arrest took place outside the village limits, that venue extension is cured by R.C. 2935.03(D), which reads as follows:

"If a sheriff, deputy sheriff, marshal, deputy marshal, police officer, constable, or state university law enforcement officer appointed under section 3345.04 of the Revised Code is authorized by division (A), (B), or (C) of this section to arrest and detain, within the limits of the political subdivision, college, or university in which he is appointed or elected, a person until a warrant can be obtained, the peace officer may, outside the limits of the political subdivision, college, or university in which he is appointed or elected, pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:

"(1) The pursuit takes place without unreasonable delay after the offense is committed;

"(2) The pursuit is initiated within the limits of the political subdivision, college, or university in which the peace officer is appointed or elected;

"(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to division (G) of section 4507.40 of the Revised Code."

Because the first assignment of error concerns a subject which is irrelevant to the power to make the arrest, it is overruled. The second assignment of error is well-taken.

The third assignment of error states:

"The trial court erred in sustaining the defendant-appellee's motion to suppress all evidence obtained as a result of the arrest of the defendant-appellee."

In this assignment, the appellant argues that the trial court erroneously applied the exclusionary rule finding an illegal seizure in violation of the Fourth Amendment. In the motion the defendant claimed the "seizure" was illegal for lack of probable cause. The trial court, while not specifically mentioning lack of probable cause, stated that the suppression "should be granted as to all branches of defendant's motion."

At the outset, it is readily apparent that the officer had probable cause to arrest the defendant after observing his erratic driving, and the subsequent observation of an alcoholic odor. Assuming the warrantless arrest is within the context of the Fourth Amendment, we find no violation, given the probable cause to make the arrest. *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232 [18 O.O.3d 435]; 26 Ohio

Jurisprudence 3d, Criminal Law, Section 476.

The officer, as we have held, was a duly appointed police officer. By virtue of the provision of R.C. 2935.03, he had authority to arrest and detain a person found violating a statute or ordinance, and to do so outside the subdivision territorial limits if the offense was one for which points were chargeable under R.C. 4507.40. It was. Moreover, the officer had probable cause to effect the arrest, and hence the evidence resulting from the arrest was not illegally obtained, and is not subject to suppression.

We conclude that the court's application of the exclusionary rule was erroneous as a matter of law.

The third assignment of error is well-taken.

The fourth assignment of error states:

"The trial court erred in suppressing the testimony of Patrolman Michael Merritt related to any observations that he made prior to the arrest of the defendant-appellee."

Evid. R. 601 states:

"Every person is competent to be a witness except:

"(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute."

The Staff Notes state that this rule reiterates R.C. 4549.14 and 4549.16 and preserves the provisions of those statutes. The state argues that even though the arrest was made by an officer in an unmarked car, the evidence prior to the *technical* point of arrest should not be suppressed. We do not agree.

The intent of the rule was to create uniformity in police work, and to prevent speed traps and other similar abuses in the enforcement of traffic laws. *Dayton* v. *Adams* (1967), 9 Ohio St. 2d 89 [38 O.O.2d 223]; *Columbus* v. *Stump* (1974), 41 Ohio App. 2d 81 [20 O.O.2d 86]. If this court were to adopt the state's interpretation, the purpose of the rule would be effectively thwarted. Under the state's analysis, speed traps could be set up, arrests made, and only the evidence after arrest would be precluded under Evid. R. 601(C). This is an interpretation the legislature could not have intended. Accordingly, part five of the suppression order, as to Merritt, is affirmed. The testimony of Merritt, *in its entirety,* must be excluded because he is, by virtue of the statute cited, incompetent to testify.

Finally we come to the question as to the testimony of the arresting officer at the hearing on suppression as distinguished from possible testimony at trial. Was that testimony at the hearing incompetent under R.C. 4549.14, 4549.16, and Evid. R. 601(C)? It clearly was. Was there any objection? We find no objection made on the ground of statutory incompetency. The failure to timely object constitutes a waiver of that objection.

In 81 American Jurisprudence 2d 177, Witnesses, at Section 135, it is said:

"Persons entitled to object to the competency of a witness may waive their objection and permit the witness to testify."

In 56 Ohio Jurisprudence 2d 507, Witnesses, Section 74, it is said:

"It is a general rule that the incompetency of a witness may be waived by allowing him to testify without objection, with knowledge of his incompetency. Accordingly, Ohio courts have held that failure to object to the competency of a witness at the proper time is a waiver of it, and the question of incompetency cannot later be raised to prevent the witness from again testifying in the same cause."

Here the object of the motion to suppress was the suppression of testimony at trial. However, no objection was made to

the testimony of the officer *at the suppression hearing* on the ground of incompetency. Thus the determination by the trial court as to suppression of testimony of Merritt at trial was correct. However, no objection having been raised to his testimony at the suppression hearing, objection thereto was waived, and his testimony establishing the validity of the arrest was properly before that court.

See, also, *Milnark* v. *Eastlake* (1968), 14 Ohio Misc. 185 [43 O.O.2d 417].

In the present case it was a fact that the officer was driving his own personal vehicle and that the vehicle was without police markings. However, no objection on the ground of competency was made and there was no motion to strike the testimony as presented.

We would conclude there was a waiver of objection to the competency of the witness to testify at the suppression hearing.

We then conclude that the trial court was correct and its judgment is effectual in suppressing the testimony of Merritt at trial on the ground that he was, by statute, an incompetent witness. The trial court was incorrect and its judgment is reversed as to the suppression of any other evidence, and in sustaining the appellee's motion to suppress in all other particulars.

*Judgment affirmed in part and reversed in part.*

MILLER, P.J., and GUERNSEY, J., concur.