The STATE of Ohio, Appellee,

v.

BUTLER, Appellant.

[Cite as *State v. Butler* (1991), 77 Ohio App.3d 143.]

Court of Appeals of Ohio,
Ross County.

No. 1576.

Decided Sept. 11, 1991.

*William J. Corzine III*, City Law Director, for appellee.

*James T. Boulger*, for appellant.

HARSHA, Judge.

This is an appeal from a judgment rendered upon a jury verdict in the Chillicothe Municipal Court finding Carl B. Butler, defendant-appellant, guilty of violating R.C. 2921.33, resisting arrest (a misdemeanor of the second degree) and R.C. 4511.19(A)(1), driving under the influence (a misdemeanor of the first degree). Appellant was sentenced to serve fifteen days in jail and pay a fine of $150 plus costs on the former charge. On the latter, he was sentenced to serve thirty days in jail and pay a fine of $300 plus costs. The two terms of incarceration were ordered to run concurrently. Additionally, appellant's operator's license was suspended for a period of one year.

Appellant assigns the following error:

"The trial court erred to the prejudice of the defendant in admitting into evidence over objection the testimony of an officer who arrested the defendant for a misdemeanor traffic violation at a time when the arresting officer was not using a properly marked vehicle and at a time when the arresting officer was not wearing a legally distinctive uniform as defined by a statute, such witness being incompetent to testify pursuant to Rule 601(C) of the Ohio Rules of Evidence and Ohio Revised Code Section 4549.14 and Ohio Revised Code Section 4549.16."

The evidence in this case reveals that the Sheriff of Ross County, Thomas L. Hamman, was attending to personal business during the late night hours of August 27, 1988 and the early morning hours of August 28, 1988. He was in an unmarked vehicle and he was not in uniform. His wife and daughter were in the vehicle with him.

The Hammans were on their way to their home when the sheriff saw a blue van enter an intersection without stopping at a stop sign. According to Hamman's testimony, the van nearly hit the vehicle in which the Hammans were riding; it then weaved off the side of the road. The van proceeded to a nearby carry-out where the driver, appellant, Carl Butler, left the vehicle. Sheriff Hamman spoke briefly to Butler and then told him he was under arrest for driving while under the influence of alcohol. A scuffle broke out between appellant and the sheriff. Appellant ultimately was restrained and placed under arrest.

At trial, the state called the sheriff to testify. Appellant objected upon the basis that the sheriff was not competent to be a witness. The trial court overruled appellant's objection on the grounds that the sheriff "was not on duty for the exclusive or main purpose of enforcing traffic laws * * *."

Appellant was ultimately found guilty after the state presented three other witnesses and appellant presented his defense.

Evid.R. 601 provides in pertinent part:

"Every person is competent to be a witness except:

" * * *

"(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute." [1]

Appellant correctly notes that the only issue is whether Sheriff Hamman was "on duty for the exclusive or main purpose of enforcing traffic laws * * * at the time of the arrest * * *." If the sheriff was on duty for such purpose, then he was incompetent to be a witness against appellant. We find that Sheriff Hamman was not "on duty" for such purpose and accordingly affirm the judgment of the trial court.

Appellant argues that Hamman came "on duty for the exclusive or main purpose of enforcing traffic laws" when the sheriff observed appellant's vehicle and decided to pursue it. He bases his argument upon the decisions in *State v. Clark* (1983), 10 Ohio App.3d 308, 10 OBR 513, 462 N.E.2d 436; *Brookville v. Louthan* (1982), 3 Ohio Misc.2d 1, 3 OBR 64, 441 N.E.2d 308; and *State v. Maxwell* (1978), 60 Ohio Misc. 1, 14 O.O.3d 44, 395 N.E.2d 531. In accordance with *Louthan* and *Maxwell*, appellant argues that Sheriff Hamman came "on duty" when he began to act like a police officer. Appellant further contends that as Hamman began to act like a police officer upon observing what he believed was a traffic violation, Hamman must have come

---

**1.** Similarly, R.C. 4549.14 and 4549.16 provide:

R.C. 4549.14:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code."

R.C. 4549.16:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was not wearing a distinctive uniform in accordance with section 4549.15 of the Revised Code."

"on duty for the exclusive or main purpose of enforcing traffic laws." Appellant's argument is without merit.

If we were to accept appellant's argument, the words "on duty" as found in the rule and statutes would be mere surplusage since an officer would instantly and metaphysically always be on duty as soon as he or she undertook any law enforcement activities. We are not to presume that such a result was the legislature's intent. See *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441; *Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 70 O.O.2d 300, 324 N.E.2d 566.

R.C. 2935.03(A) creates a mandatory duty for a sheriff or other peace officer to arrest and detain any "person found violating * * * a law of this state." This duty is not qualified by the duty status of the peace officer. An off-duty officer must arrest a person whom the officer observes committing a crime within the officer's territorial jurisdiction. A duly commissioned peace officer holds a public office upon a continuing basis and his or her obligation to preserve the peace is not conditioned upon a duty status. See *State v. Clark, supra,* 10 Ohio App.3d at 309, 10 OBR at 514, 462 N.E.2d at 438, and the authorities cited therein.

In reviewing a peace officer's competency to testify under Evid.R. 601(C), courts must be cognizant of the continuous nature of this obligation. Viewed in this context, the "on duty" language found in the rule and R.C. 4549.14 and 4549.16 has a clear purpose and meaning.

The legislative purpose in enacting R.C. 4549.14 (which section corresponds to the language of Evid.R. 601[C]) was "to provide uniformity in traffic control and to curb the 'speed traps' that were often operated by municipal and township peace officers in unmarked cars." *State v. Huth* (1986), 24 Ohio St.3d 114, 115, 24 OBR 306, 307, 493 N.E.2d 961, 963. See, also, *Dayton v. Adams* (1967), 9 Ohio St.2d 89, 90, 38 O.O.2d 223, 224, 223 N.E.2d 822, 823; *Columbus v. Murchison* (1984), 21 Ohio App.3d 75, 76, 21 OBR 79, 80, 486 N.E.2d 236, 237; *State v. Clark, supra,* 10 Ohio App.3d at 311, 10 OBR at 516, 462 N.E.2d at 440; *Columbus v. Stump* (1974), 41 Ohio App.2d 81, 83–84, 70 O.O.2d 86, 87–89, 322 N.E.2d 348, 350–351. In referring to these statutes collectively, the Tenth District Court of Appeals found:

"One of the safety concerns addressed by the General Assembly in enacting the statutes was the hazard to members of the public that inevitably would result should a police officer, not clearly identified as such, confront a driver and attempt to require him to follow the officer's instructions. It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring

police officers on traffic duty to be identified clearly." *Murchison, supra,* 21 Ohio App.3d at 76, 21 OBR at 81, 486 N.E.2d at 238.

In this case, the sheriff was not operating a "speed trap." He did not force appellant off the road; rather, he followed appellant who stopped of his own accord. The sheriff identified himself to appellant and appellant indicated that he recognized the sheriff. None of the dangers that the legislature sought to avoid were present here. Ruling Sheriff Hamman incompetent to be a witness under these circumstances would not further the legislative intent. Cf. *Columbus v. Murchison, supra.* Under these circumstances, Sheriff Hamman was not "on duty for the exclusive or main purpose of enforcing traffic laws" as that phrase is used in R.C. 4549.14, 4549.16, and Evid.R. 601(C). Accordingly, he was competent to testify.

The appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent because I believe that the trial court erred in admitting Sheriff Hamman's testimony because he was incompetent to testify pursuant to Evid.R. 601(C) and R.C. 4549.14 and 4549.16.

Evid.R. 601(C) provides:

"Every person is competent to be a witness except:

" * * *

"(C) *An officer, while on duty for the exclusive or main purpose of enforcing traffic laws,* arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute." (Emphasis added.)

R.C. 4549.14 and 4549.16 correspond to the language of Evid.R. 601(C).

R.C. 4549.14 provides:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompe-

tent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code."

R.C. 4549.16 provides:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was not wearing a distinctive uniform in accordance with section 4549.15 of the Revised Code."

The parties do not dispute the facts that at the time Hamman arrested Butler, Hamman was driving an unmarked vehicle and he was not in uniform pursuant to R.C. 4549.14 and 4549.16. Thus, the issue below and presently before this court is whether Hamman was on duty exclusively or for the main purpose of enforcing Ohio traffic laws.

Butler asserts that although Hamman was "off duty" at the time he saw the blue van at the intersection Hamman came "on duty" for the purpose of enforcing traffic laws when he followed the van into the carry-out lot, blocked the van in, checked the license plate number, and restrained Butler until assistance came. The state contends that Hamman was "off duty" and remained so because he was not "on duty" for the specific purpose of enforcing the traffic laws. Hamman himself said he was driving home in civilian clothes with his wife, when he saw Butler's van and decided to follow and arrest him.

In support of its contention the state cites the case of Columbus v. Murchison (1984), 21 Ohio App.3d 75, 21 OBR 79, 486 N.E.2d 236. In Murchison, the Tenth District Court of Appeals held a police officer is competent to testify if he was not on duty for the purpose of enforcing the traffic laws prior to the arrest of the person charged with violating a traffic law. However, I believe Murchison to be distinguishable from the facts in the present case.

In Murchison a uniformed officer named Turner was in an unmarked vehicle, returning from a special duty traffic assignment when he observed a vehicle being operated in an erratic manner. He followed Murchison's vehicle which was being operated in an erratic manner. Turner did not attempt to make an arrest, but radioed for a police cruiser. Murchison was placed under

arrest by another police officer who arrived in a marked cruiser. Murchison was convicted and on appeal raised an assignment of error similar to the one before this court.

The decision in *Murchison* also turned on the issue of whether the officer was "on duty" pursuant to Evid.R. 601(C) or R.C. 4549.14. The *Murchison* court first examined the legislative intent contemplated by the words "on duty," as follows:

"In order to determine whether Turner was 'on duty' as contemplated by the statutes, we should first examine the legislative intent they manifest. According to the Supreme Court, it was the intent of the General Assembly, in part, when it adopted the statutes, to curb speed traps and to provide uniformity in traffic control and regulation in an effort to make driving safer in all areas of the state. *Dayton v. Adams* (1967), 9 Ohio St.2d 89, 90 [38 O.O.2d 223, 224, 223 N.E.2d 822, 823]. One of the safety concerns addressed by the General Assembly in enacting the statutes was the hazard to members of the public that inevitably would result should a police officer, not clearly identified as such, confront a driver and attempt to require him to follow the officer's instructions. It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring police officers on traffic duty to be identified clearly." *Id.*, 21 Ohio App.3d at 76, 21 OBR at 81, 486 N.E.2d at 238.

The Tenth District Court of Appeals held that the officer, Turner, was not "enforcing traffic laws." Turner followed the vehicle until it stopped, did not try to make an arrest, but instead called for an officer to make the arrest. Hamman followed the vehicle until it stopped, and although out of uniform, made the arrest and then called another officer. Officer Turner followed the law; Sheriff Hamman did not. It is as simple as that. Butler relies on *State v. Clark* (1983), 10 Ohio App.3d 308, 10 OBR 513, 462 N.E.2d 436, and *Brookville v. Louthan* (1982), 3 Ohio Misc.2d 1, 3 OBR 64, 441 N.E.2d 308. In *Louthan*, the Montgomery County Court held:

"An 'off duty' police officer comes on duty for the specific purpose of enforcing the traffic laws at the point in time where he begins to act like a police officer and exercises his power as a police officer."

The officer in *Louthan* as well as the officer in *Clark, supra,* both exercised their power as police officers by arresting the respective defendants, thus making them "on duty" for purposes of the statutes and Evid.R. 601(C). Both the officers in *Louthan* and *Clark* were deemed incompetent to testify.

The facts in the above cases are analogous to the facts before this court.

Sheriff Hamman, as the officer in *Louthan*, came on duty when, at the intersection, he began to act like a police officer and when he began to exercise his power as a police officer by blocking Butler's van, doing a license check and restraining Butler. Hamman, out of uniform and in an unmarked vehicle, clearly came "on duty" for the specific purpose of enforcing a traffic law. He did not, as in *Murchison, supra*, call in for an officer to make the arrest. Thus, pursuant to Evid.R. 601(C) as well as R.C. 4549.14 and 4549.16, the trial court should have found Sheriff Hamman incompetent to testify. The trial court erred in not doing so.

In the majority opinion it is said that although the sheriff was not in uniform or in a marked police car, he could still testify because, "[n]one of the dangers that the legislature sought to avoid were present here."

If one follows that line of reasoning completely, one would have to conclude that there was no DWI because none of the dangers the legislature sought to avoid by enacting the DWI statute are present here either. The DWI law was enacted because drunk drivers cause death and injury, but DWI is still illegal whether there is an accident or not. The uniformed-traffic-officer law was enacted to avoid situations where the driver has to wonder about the identity or authority of the guy making the arrest, but the law still applies whether there is a problem with this or not. It is the same thing.

One final point should be made. The majority decision in this case is a slap in the face to competent police officers, like Officer Turner in *Murchison, supra*. Turner knew the law and followed it, and ought to be applauded for his competence. Hamman either did not know the law, or ignored it, yet this court rules that doing it, the wrong way doesn't matter.

I believe it does matter, and must therefore dissent.