CONOVER, Appellee,

v.

LAKE COUNTY METRO PARKS SYSTEM et al., Appellants.

[Cite as *Conover v. Lake Cty. Metro Parks Sys.* (1996), 114 Ohio App.3d 570.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–201.

Decided Sept. 30, 1996.

William J. Sexton, for appellee.

Leo J. Talikka, for appellant Lake County Metro Parks System.

Betty D. Montgomery, Attorney General, Doug S. Musick and Cecille C. Harris, Assistant Attorneys General, for appellants Lake County Metro Parks System, Administrator, Ohio Bureau of Workers' Compensation, and Chairman, Industrial Commission of Ohio.

FORD, Presiding Judge.

Appellants, Lake County Metro Parks System, the Administrator of the Bureau of Workers' Compensation, and Industrial Commission of Ohio,[1] appeal from a judgment of the Lake County Court of Common Pleas, granting a directed verdict in favor of Susan Conover, appellee, in a workers' compensation appeal.

Appellee filed a claim with the bureau for injuries she sustained on October 3, 1992, while riding a horse on Hogbark Ridge, in the Lake County Metro Parks System. Appellee is a member of the Lake Metro Parks Volunteer Mounted Posse,[2] a group of experienced equestrians that provide assistance to the Lake Metro Parks Mounted Rangers on a volunteer basis. Appellee suffered injuries when her horse slipped on shale while crossing a creek, causing appellee to fall to the ground.

Appellee's claim was initially approved by a claims representative of the Bureau of Workers' Compensation by a letter dated January 12, 1994. The claim was denied by the district hearing officer in an order dated April 12, 1994, on the basis that appellee was not deemed to be an employee, pursuant to the holding in Cogar v. Shupe Middle School (June 19, 1991), Lorain App. No. 90CA004910, unreported, 1991 WL 116245. Appellee appealed from the April 12, 1994 order,

---

1.  We will refer to Lake County Metro Parks System as "Lake County," to the Administrator of the Bureau of Workers' Compensation and the Industrial Commission of Ohio as "Administrator," to the Bureau of Workers' Compensation as "bureau," and to the parties collectively as "appellants."

2.  We will refer to the volunteer group as "the posse."

and the staff hearing officer affirmed the decision of the district hearing officer in an order dated August 2, 1994. Appellee appealed the August 2, 1994 decision, and on December 14, 1994, the Administrator refused to hear the appeal.

Appellee filed an appeal in the Lake County Court of Common Pleas on June 24, 1995. The testimony adduced at trial revealed the following facts. The posse members are unpaid volunteers that serve as the "eyes and ears" for the mounted rangers. The volunteers assist the mounted rangers in patrolling the park, especially in remote areas which are not easily accessible by foot. The posse members control the flow of traffic and crowds, assist the mounted rangers in criminal investigations, ride in parades, present educational programs to the public, serve as sources of information for the public, and act as goodwill ambassadors. In order to gain membership, a volunteer is required to be an experienced equestrian, to undergo thirty-six hours of training, to pass a written examination, and to participate in ten hours of activities on a monthly basis to maintain membership status. The members may choose the scheduled activities in which they desire to participate.

The posse members possess no law enforcement authority, receive no law enforcement training, do not carry sidearms or mace, and do not wear badges, only nameplates. The volunteers are not permitted to make any arrests themselves, but must report any observed criminal activity to the mounted park rangers. The posse members work under the supervision and direction of the mounted rangers, who are duly appointed law enforcement officers. Some posse members supply their own horses, while others use horses provided by Lake County. The volunteers are required to wear uniforms issued by Lake County when participating in posse activities.

One purpose of the October 3, 1992 "recreational, fun" ride was to reward the posse members for the numerous hours that they had volunteered. A second reason for the ride was to help familiarize the posse members with the less traveled trails in the park so that the volunteers could use that knowledge in the future. Appellee's expert witness testified regarding the extent of appellee's injuries and the fact that her ability to perform her duties as a nurse at Geauga Hospital had been impaired as a result of those injuries.

On November 28, 1995, the trial court granted a directed verdict for appellee. The trial court found that (1) appellee was a volunteer; (2) the activities of the posse were all law enforcement activities; (3) appellee was an employee under R.C. 4123.01; (4) appellee was a law enforcement official as a member of the posse organization; (5) appellee was engaged in an activity which generated some benefit, directly or incidentally, to the employer; (6) the organized event was part of the ten-hour monthly requirement; (7) the park board benefited from the volunteer hours contributed by appellee; and (8) appellee's fall was an accident

arising out of and in the scope of employment. Accordingly, the trial court held that appellee should participate in the Workers' Compensation Fund.

Lake County timely appealed and raises two assignments of error:

"1. The trial court erred as a matter of law in holding that a volunteer mounted horseback unit member is entitled to participate in the worker's [sic] compensation system.

"2. The trial court improperly granted a directed verdict where reasonable minds could reach different conclusions."

The Administrator raises a similar first assignment of error, and also raises a different second assignment:

"2. The trial court erred in directing a verdict for a volunteer mounted park ranger in a workers' compensation appeal where defense witnesses testified that no work purpose was being served during a recreational fun ride."

The standard for granting a directed verdict under Civ.R. 50 is stated as follows:

"[T]he evidence must be construed most strongly in favor of the party opposing the motion. To grant [the] motion, a trial court must find that reasonable minds could come to but one conclusion and that conclusion must be adverse to the party opposing the motion. Civ.R. 50(A)(4); *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 45, 564 N.E.2d 462, 468 (if reasonable minds can come to more than one conclusion the issue should go to the jury)." *Vance v. Consol. Rail Corp.* (1995), 73 Ohio St.3d 222, 231, 652 N.E.2d 776, 784. See, also, *Awadalla v. Robinson Mem. Hosp.* (June 5, 1992), Portage App. No. 91–P–2385, at 4–5, unreported, 1992 WL 188333.

■ "A motion for directed verdict tests the legal sufficiency of the evidence, and therefore presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. Accordingly, [an appellate court must] make an independent review." (Citations omitted.) *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961. As is the case with any question of law, the standard of review is *de novo*. *Fields v. Anderson* (Oct. 19, 1994), Montgomery App. No. 14113, unreported, at 3, 1994 WL 579861.

■ In the first assignment, Lake County and the Administrator argue that the workers' compensation system does not extend coverage to volunteer mounted horseback members, but only provides the right to compensation to those volunteers of lawfully constituted police and fire departments. In the instant appeal, we must decide whether the trial court properly determined that appellee, a volunteer member of a unit formed to assist park rangers in carrying out law

enforcement functions, was an employee by operation of law under R.C. 4123.01(A)(1)(a) and was, thereby, entitled to receive benefits under R.C. 4123.54.

R.C. 4123.01 defines the term "employee" for purposes of workers' compensation and provides:

"(A)(1) 'Employee' means:

"(a) Every person in the service of the state, or of any county, municipal corporation, township, or school district therein, including regular members of lawfully constituted police and fire departments of municipal corporations and townships, whether paid or volunteer * * *."

██ "The rule of law [under R.C. 4123.95] calls for a liberal construction of the Workmen's Compensation Law. Unless the person is clearly within the exception, the right to compensation will be upheld." *Indus. Comm. v. Rogers* (1929), 34 Ohio App. 196, 198, 170 N.E. 600, 600. In *Faulkner v. Mayfield* (1988), 39 Ohio App.3d 136, 138, 529 N.E.2d 1294, 1296, the Fourth District Court of Appeals stated:

"The language in R.C. 4123.01 uses broad universal phrasing, such as '[e]very person in the service of the state, or of *any* county' * * *. ' "Injury" includes *any* injury * * *.' The exceptions to R.C. 4123.01(A) are quite narrow, excluding only ministers and the officers of a family farm corporation, and even these employees may be covered if the employer elects to do so. The clear legislative intent is to make workers' compensation coverage broad enough to include the entire range of employment relations people might enter into." (Citation omitted and emphasis *sic*.) See, also, *Caygill v. Jablonski* (1992), 78 Ohio App.3d 807, 810, 605 N.E.2d 1352, 1353–1354.

However, the liberal construction rule is not absolutely and unqualifiedly applicable. See *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 57, 521 N.E.2d 778, 779–780. The rule "does not necessarily equate with giving an individual claimant what he thinks is best in his particular situation." *Id.*

Initially, we observe that appellee, as a posse member, does not fall within the narrow exceptions to R.C. 4123.01(A)(2). The statute specifically includes only volunteer policemen and volunteer firemen. Thus, we must determine the significance of the omission of other classes of volunteers from the statutory language. "The goal of statutory construction is to ascertain and effectuate the intention of the General Assembly. It is a basic doctrine of construction that the express enumeration of specific classes of persons in a statute implies that the legislature intended to exclude all others. *State ex rel. Boda v. Brown* (1952), 157 Ohio St. 368, 372, 47 O.O. 262, 264, 105 N.E.2d 643, 646." *Ft. Hamilton–Hughes*

*Mem. Hosp. Ctr. v. Southard* (1984), 12 Ohio St.3d 263, 265, 12 OBR 342, 343, 466 N.E.2d 903, 905.[3]

In accordance with the doctrine of *expressio unius est exclusio alterius,* we read the clauses in R.C. 4123.01(A)(1)(a) to mean that *only* volunteer members of township or municipal police and fire departments are considered employees by operation of law. As the court stated in *Silver Circle, Inc. v. Thomas* (Nov. 29, 1995), Hamilton App. Nos. C–950146, C–950166, unreported, at 1, 1995 WL 699892, and applied to the facts in this case, "[w]e infer from these precise terms that had the legislature wanted to [classify other volunteers as employees], it would have expressly included [those groups of volunteers] in the statute. It did not." The statute does not mention volunteers that work with county-sponsored police organizations, only volunteer policemen who provide services to townships and municipalities. Consequently, this court will not insert volunteer members of a unit related to a county park district law enforcement unit into the language of R.C. 4123.01(A)(1)(a).[4]

The import of R.C. 4123.03 supports our determination that the posse members cannot properly be considered as employees by operation of law under R.C. 4123.01(A)(1)(a). The Attorney General analyzed the significance of R.C. 4123.02 and 4123.03, and stated:

"R.C. 4123.03 authorizes political subdivisions to contract with the Industrial Commission to provide coverage for any person in its service who is not entitled to compensation as an employee of the subdivision, and who, therefore is not otherwise entitled to coverage. The sole expressed limitation is the reference to R.C. 4123.02 which excepts policemen or firemen entitled to participate in a pension fund maintained by a municipal corporation." 1982 Ohio Atty.Gen.Ops. 82–045, at 4673.

The Ohio Attorney General also determined that a township police trainee appointed as an auxiliary officer, who received no compensation for his services, who had no regular duty schedule, who was not a "regular member" of a lawfully constituted police force, and who failed to qualify as an employee under R.C. 4123.01(A)(1), could nevertheless qualify for workers' compensation benefits if covered by contract under R.C. 4123.03. Ohio Atty.Gen.Ops. No. 78–031, at 5893. The Attorney General reasoned as follows:

---

3. See, also, 1991 Ohio Atty.Gen.Ops. No. 91–017.

4. "One cardinal rule of statutory construction is that the 'court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged.'" *State ex rel. City Iron Works v. Indus. Comm.* (1977), 52 Ohio St.2d 1, 4, 6 O.O.3d 37, 38, 368 N.E.2d 291, 293.

"[I]t is my understanding that the auxiliary trainees in question are not required to adhere to any schedule for performance of their duties, but need only assist officers for a specified number of hours per month. The trainee's function is totally subordinate to those of regular officers and it is my understanding that the trainees function essentially as observers. For these reasons, under even the most liberal imaginable construction of the term 'regular member' of a township police department, I must conclude that an auxiliary trainee described in your first question does not qualify as an 'employee' under the terms of R.C. 4123.01(A)(1).

"It is, however, significant that R.C. 4123.03, the statutory provision which allows the state or one of its political subdivisions to contract for coverage on persons in its service who do not qualify as employees under R.C. 4123.01(A)(1), specifically includes 'volunteer firemen, and auxiliary policemen' among those who will need special coverage. By so providing in this statute, the General Assembly recognized that persons rendering auxiliary services are among those in public service who are not included as 'employee.'" *Id.* at 5892.

It is our view that when R.C. 4123.01(A)(1)(a) and 4123.03 are read *in pari materia*, the inescapable conclusion is that the legislature envisioned that volunteers other than those specifically enumerated in R.C. 4123.01(A)(1)(a) would be eligible for coverage when covered by contract under R.C. 4123.03.

The rule announced by the Ninth District Court of Appeals in *Cogar, supra*, further supports our determination that appellee is not an "employee" by operation of law, and that contract coverage is the appropriate mechanism to secure such workers' compensation benefits for a person in her situation. "It is a well-settled rule that courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command." *Swallow,* 36 Ohio St.3d at 57, 521 N.E.2d at 779. The *Cogar* court stated:

"James Young, a former Administrator of the Bureau of Workmen's Compensation and a recognized expert in the field, observed that '[o]nly volunteer policemen and volunteer firemen are considered employees by operation of law, all other volunteers must be covered by contract before coverage can be extended.' Young, Workmen's Compensation Law of Ohio (1971) 70, Section 4.19.

" * * * *

"[I]n view of the longstanding construction by the Industrial Commission, we hold that volunteers, other than regular members of lawfully constituted police and fire departments, are not employees as defined in R.C. 4123.01(A)(1)(6)." *Cogar, supra*, at 2–3.

It is our considered opinion that the facts presented in this case exemplify exactly the situation where contract coverage under R.C. 4123.03 would have been appropriate. Regrettably, Lake County officials, for whatever reason, did not secure such coverage for appellee. Appellee undoubtedly provided valuable services to the county in her role as a posse member. Nevertheless, we cannot conclude that she was an employee by operation of law under R.C. 4123.01(A)(1)(a).

The trial court found that the activities of the posse members could justifiably be classified as law enforcement activities and that the posse members were law enforcement officials. The trial court reasoned as follows:

"The defense claims that the posse are not police, they have no arrest powers and they do not have a badge. All of those issues are correct, except that in order to be a policemen you do not have to have arrest powers; you do not have to have a badge.

"Auxiliary organizations exist all over the country for police departments and by and large they do not have any arrest power, although they do, depending on the departments, carry badges.

"But that is not the sole criterion of being a policeman. It is the function or the use to which the organization is put in determining whether or not they perform a police function. And certainly, traffic control, crowd control, representing the ranger department, complementing and assisting the rangers, going on patrols and looking for people in the woods and that sort of thing, those are all police functions."

Upon consideration of the pertinent case authorities, we reluctantly determine that the trial court's determinations were erroneous. We reach this conclusion after a review of the statutory and case law concerning the scope of authority and activities of peace officers and law enforcement officers.[5]

In *Dektas v. Leis* (1989), 64 Ohio App.3d 450, 452, 581 N.E.2d 1150, 1151, the court, in determining whether jail correction officers were peace officers, stated:

"In order for a person to be a peace officer under R.C. 109.71(A)(1), three criteria must be met. First, the person must be appointed to one of the specific positions enumerated in the statute. Second, the person must be commissioned or employed as a peace officer by a political subdivision of this state. Third, the person's primary duties must be to preserve the peace, to protect life and property, and to enforce laws, ordinances or regulations." (Citations omitted.)

---

**5.** Park rangers are classified as peace officers under R.C. 109.71(A)(7). Auxiliary police officers are classified as law enforcement officers pursuant to R.C. 2901.01(K)(4).

The *Dektas* court held that jail correction officers were not peace officers under R.C. 109.71(A) because their training requirements were "significantly different from those required of 'peace officers' pursuant to Ohio Adm.Code Chapter 109:2-1." *Id.* The court further held that the primary duties of the jail correction officers did not equate to those of peace officers within the meaning of R.C. 109.71(A)(1). *Id.*

In *State v. Glenn* (Feb. 5, 1985), Portage App. No. 1286, unreported, at 5, 1985 WL 7797, affirmed (1986), 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701, this court held that a reserve deputy, essentially a volunteer for limited service sheriff assignments, was properly classified as a peace officer when that person "assume[d] the same responsibilities and [was] required to complete the same extensive training course." (Citations omitted.)

Admittedly, the activities of the volunteer posse members are, in some respects, analogous to the activities engaged in by the park rangers and other peace and law enforcement officers, *e.g.*, assisting in criminal investigations, park patrol, and crowd control. However, that does not necessarily lead to the conclusion that the posse members are, thereby, properly classified as law enforcement officials. The posse members themselves lack the authority to enforce the laws, including arrest authority. Instead, the members are provided with two-way radios and are required to report any observed illegal activities to the park rangers, essentially acting as the "eyes and ears" of the park rangers. This type of activity is strikingly similar to the activities undertaken by various "neighborhood watch" civilian organizations.

We believe that the lack of authority to enforce the law is a critical distinguishing factor between auxiliary police officers and the posse members. In *State v. Clark* (1983), 10 Ohio App.3d 308, 309, 10 OBR 513, 514, 462 N.E.2d 436, 439, the court stated that "[a] law enforcement officer, which includes an auxiliary police officer, necessarily has the power to enforce the law. This power includes the *power* to arrest, depending, of course, on the scope of the appointment." (Emphasis *sic*.) While the trial court correctly stated that not all auxiliary police officers possess arrest authority, that observation does not address the fact that auxiliary police officers generally possess the power to enforce the law. Significantly, appellee was not imbued with this power. Thus, appellee's authority is not equal to that of an auxiliary police officer, even though some of her functions are similar. Accordingly, the trial court improperly classified appellee as a law enforcement official.

Appellants' first assignments of error have merit. The trial court erroneously granted a directed verdict for appellee because appellee was not an employee as defined in R.C. 4123.01(A). Accordingly, the trial court should have granted a directed verdict in favor of appellants. Thus, Lake County's second assignment

of error is without merit. Because it is not necessary to reach the issue of whether the recreational ride served a work purpose, the Administrator's second assignment is also without merit.

The judgment of the trial court is reversed, and judgment is entered for appellants.

*Judgment reversed.*

CHRISTLEY and DONOFRIO, JJ., concur.

JOSEPH DONOFRIO, J., retired, of the Seventh Appellate District, sitting by assignment.