Appellant, Ernesto Sanchez, is appealing his conviction for assault on a police officer while the officer was performing his official duties. For the following reasons, we affirm.
The following facts were adduced at trial:
The doorman of Club 1148 testified that appellant presented a Florida identification card. The picture on the ID did not look like appellant. Appellant could not provide his date of birth and address. The doorman believed the ID was fake, and told appellant to leave. Appellant refused to leave the club. The doorman enlisted Scott Ford, the security officer, to assist him.
Scott Ford is a Cleveland Police Officer. Ford was off duty, working as a security guard for Club 1148. Ford testified that his duties as a police officer included making arrests, maintaining the peace and enforcing the laws. When Ford worked part-time security jobs, his official duties remained the same. When working as a security guard, he wore a police uniform. As a police officer, Ford was assigned to the Fourth and Fifth Districts. Club 1148 is in the Second District.
Ford testified that as he moved in closer to appellant, appellant pushed him. Appellant punched Ford several times in the torso. Ford wrapped his arms around appellant to subdue him. Appellant attempted to lift Ford and throw him to the ground. Ford pushed appellant away and sprayed him with pepper spray. Appellant left the club. Ford arrested appellant. Since Ford was wearing body armor, appellant's blows did not hurt him.
Appellant testified that he was 23 years old at the time of the incident, and his ID was valid. He told the doorman his birth date, but could not remember his social security number. When the doorman refused to admit him to the club, he became upset and argued with the doorman. Officer Ford came up and started yelling at him. Without any provocation, Ford hit him. Ford pinned him to a wall and maced him when he tried to get free. Then, Ford was kicking him. When he was handcuffed in the parking lot, Ford came out and kicked him in the ribs. He received medical treatment for his ribs. Appellant said he never struck Ford.
Appellant's cousin testified that he took appellant to the hospital.
Appellant's attorney asked for an instruction on the legal definition of official duties. Defense counsel did not have a written instruction. The trial court did not give any instructions as to the meaning of "official duties".
 I.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE ELEMENT OF WHETHER THE PEACE OFFICER WAS IN THE PERFORMANCE OF HIS OFFICIAL DUTIES.
A police officer may be performing his official duties when he is working a part-time security job. See State v. Duvall
(Jun. 6, 1997), Portage App. No. 95-P-1040, unreported, citingState v. Clark (1983), 10 Ohio App.3d 308, 309, State v. Glover
(1976); 52 Ohio App.2d 35, 38. If, at the time of the assault, the police officer was engaged in a duty imposed upon police officers by statute, the officer was performing official duties.State v. Duvall, supra at 13.
The Revised Code imposes a duty on police officers to preserve the peace and enforce all criminal laws of the state. R.C. 737.11. Duvall at 10. R.C. 2935.03(A) requires peace officers to arrest and detain individuals who are found violating state laws within their jurisdiction. Id. These duties are not limited to times when the police officer is officially on duty or "on the clock." Id. A proper jury instruction would state that a police officer is acting in his official duty when the officer is fulfilling his statutory duty to conserve the peace or to enforce laws and arrest violators. See City of Cleveland v. Atwood (Mar. 22, 1990), Cuyahoga App. No. 56692, unreported.
Appellant waived his objections to the charge. He neither formally objected nor presented the court with the correct law. See State v. Wolons (1989), 44 Ohio St.3d 64, 67, Crim.R. 30(A). Appellant waived all but plain error. State v. Underwood (1983),3 Ohio St.3d 12. An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Cooperrider
(1983), 4 Ohio St.3d 226.
In this case, it is not clear that had an instruction on a police officer's official duties been given, the result would have been otherwise. Officer Ford testified that at the time of the assault, he was attempting to make a person with an invalid ID leave an establishment where liquor was being served. Ford testified that he was engaged in keeping the peace and enforcing the laws of Ohio. It was not plain error for the trial court to omit an instruction on a police officer's official duties.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON LESSER INCLUDED OFFENSES.
Appellant asserts that the trial court should have instructed the jury on the lesser included offense of disorderly conduct, R.C. 2917.11. Absent plain error, the failure to object to a court's failure to instruct the jury on a lesser included offense is a waiver of the issue on appeal. State v. Jackson (1992),82 Ohio App.3d 667, 672, see also State v. Mack (1998), 82 Ohio St.3d 198,200. Appellant asserts that he need not request such an instruction, citing State v. Campbell (1991), 74 Ohio App.3d 352. Campbell merely holds that failure to request a written jury instruction on lesser included offense is not waiver.
Assuming that disorderly conduct is a lesser included offense in this case, appellant was not automatically entitled to a jury instruction on disorderly conduct. A charge on the lesser included offense is required only where the evidence at trial would reasonably support an acquittal on the greater crime charged and a conviction on the lesser included offense. Statev. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
R.C. 2903.13 defines assault as follows:
 No person shall knowingly cause or attempt to cause physical harm to another[.]
* * *
Disorderly conduct is defined in R.C. 2917.11(A), which provides in part:
 (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
Thus, an instruction on disorderly conduct should have been given only if: (1) the jury could have reasonably concluded that appellant did not knowingly cause or attempt to cause physical harm to Officer Ford but instead (2) recklessly caused inconvenience, annoyance or alarm by engaging in violent or turbulent behavior.
In this case, appellant testified that he was arguing with the doorman, but did not even use profanity. Appellant testified that the police officer beat him without any provocation. The jury had to choose between appellant's version, that he did nothing wrong, and Officer's Ford's version. The jury could not find that appellant caused annoyance, inconvenience or alarm by engaging in violent or turbulent behavior but did not assault the police officer. In any case, it is not clear that the jury would have found appellant guilty of disorderly conduct and not guilty of assault. The failure to give the instruction was not plain error.
Accordingly, this assignment of error is overruled.
 III.
Appellant's third assignment of error states:
 REVERSAL OR REMAND IS INDICATED BASED ON INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
To demonstrate ineffective assistance of counsel, appellant must show (1) that counsel substantially violated an essential duty, and (2) appellant was prejudiced by counsel's errors.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, State v. Bradley (1989), 42 Ohio St.3d 136. Deference is given to the strategic decisions of counsel. Id. Appellant has the burden to prove a reasonable probability that the result of the trial would have been different but for counsel's unprofessional errors. See Bradley, supra.
Appellant contends his counsel was ineffective for failing to enter into evidence: (2 appellant's Florida identification card, and (2) appellant's hospital records, showing he sustained a broken rib.
Appellant asserts that if the jury saw the Florida identification card, they would see that it appears valid. Appellant believes this would have lent credibility to him. Appellant admitted that the picture did not look like him, so the doorman did have cause to question the ID card. Additionally, the validity of the ID does not concern any of the material elements of assault. Admission of the ID would not have created a reasonable probability of acquittal.
Appellant asserts the medical records would have corroborated appellant's testimony that Ford kicked him in the ribs. Appellant's testimony that he received medical treatment was corroborated by appellant's cousin. The records would only add that appellant suffered a broken rib. The records contain appellant's statement of how the injury happened. Otherwise, the records offer no proof as to how appellant sustained the injury. The jury apparently found that appellant's version of the events was not credible. Introduction of the medical records would not have resulted in a reasonable probability of acquittal. Appellant has not demonstrated that he was prejudiced by the errors of his counsel.
Accordingly, this assignment of error is overruled.
 IV.
Appellant's fourth assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION FOR A NEW TRIAL PURSUANT TO CRIM.R. 33.
Appellant moved for a motion for a new trial based on the affidavit of jury foreperson, Kathy Lamparyk. She averred that she was not convinced that appellant was guilty beyond a reasonable doubt. The court was informed that the vote was split 11 to 1 and further discussion would not change the verdict. The jury received further instructions and was ordered to deliberate further. No deliberations took place, despite Lamparyk's efforts. The other jurors read books, balanced checkbooks and engaged in other noncase related activities. Lamparyk "was not absolutely certain" that she could maintain her dissenting vote. Also, she believed that other jurors made their decision on facts not in evidence. Lamparyk asserted that the facial expressions and comments of the trial judge unduly influenced the jury.
 In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves.
State v. Schiebel (1990), 55 Ohio St.3d 71, 75, Evidence Rule 606. Appellant introduced only a statement from a juror, and did not present any extraneous evidence of juror misconduct. Juror misconduct can not be shown absent this extraneous evidence.
The trial judge properly ordered the jurors to deliberate further upon learning that the vote was 11 to 1. When the court polled the jurors, there was no indication that it was not the verdict of one of the jurors. Cf. State v. Brown (1953), 110 Ohio App. 57, 60.
Neither Lamparyk's affidavit nor appellant's brief specifies which comments of the trial court were prejudicial. After reviewing the transcript, we found no comments by the judge which would have had a prejudicial affect. See State v. Wade (1978),53 Ohio St.2d 182, 188.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPTNSKI, J., AND KILBANE, J., CONCUR.
 ___________________________________ ANN DYKE, PRESIDING JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).