OPINION
On August 22, 1999, Appellant was arrested and charged with Driving Under the Influence (D.U.I.), a violation of R.C. §4511.19(A)(3). On August 30, 1999 Appellant entered a plea of Not Guilty. On November 18, 1999 a Judgment Entry was entered denying Appellant's Motion to Suppress Evidence. On December 22, 1999 a Judgment Entry was entered in which Appellant entered a plea of No Contest and was convicted of the D.U.I. charge.
At the November 12, 1999 hearing on Appellant's Motion to Suppress, Detective Jon Stout, an officer with the Logan County Sheriff's Office, testified that he observed Appellant driving her vehicle on August 22, 1999. Detective Stout further testified that he was off-duty, driving with his family in his personal vehicle, and that while exiting the parking lot of the Pizza Hut, he observed Appellant's vehicle stop in the middle of an intersection and then continue on traveling "all over the road, back and forth quite a bit." Detective Stout testified that he attempted to contact the Sheriff's Department via cell phone but was initially unsuccessful due to difficulties with the cellular phone. As Detective Stout continued to follow Appellant's vehicle, he observed the vehicle "almost [strike] a vehicle head-on. The vehicle had to go up on the berm to keep from being hit head-on." Appellant then pulled into a private driveway at which time Detective Stout stopped his vehicle and approached Appellant. Detective Stout identified himself, reached in a turned off the ignition to Appellant's vehicle, and instructed Appellant to exit her automobile. Detective Stout observed Appellant having difficulty exiting the vehicle, detected a strong odor of alcohol and observed that Appellant's speech was "extremely slurred."
Logan County Sheriff Deputy, Sergeant Galyk, arrived shortly after Appellant exited her vehicle. After Sergeant Galyk arrived, Detective Stout left. Following conversations with both Detective Stout and Appellant and after personally observing that Appellant's eyes were glassy, she was "stumbling around," and she was emitting a strong odor of alcohol, Sergeant Galyk administered various field sobriety tests. Appellant was then transported to the Sheriff's Department where she was given Miranda warnings and administered a BAC test.
It is from the trial court's denial of the Motion to Suppress Evidence that Appellant now appeals, prosecuting two assignments of error:
 The trial court erred by denying Appellant's Motion to Suppress all the evidence flowing from Appellant's arrest.
 a.) Whether Appellant was under arrest when the off-duty officer pulled in behind her in a driveway, reached into her car, shut off the engine of her car, told her she was under arrest and ordered her out of the car and further testified that she was not free to leave.
 The trial court erred when it refused to grant Appellant's Motion to Suppress the evidence flowing from Appellant's arrest where there was no probable cause to arrest the Defendant for driving while under the influence.
 a.) Whether the officer had probable cause to arrest when the stop was made by an off-duty officer who was not in uniform or in (sic) marked cruiser.
Because both of Appellant's assignments of error concern the propriety of the trial court's denial of her motion to suppress, we begin our review by noting the applicable standards of review for this Court.
Review of a motion to suppress ruling involves a mixed question of law and fact. United States v. McConney (C.A.9, 1984),728 F.2d 1195, certiorari denied (1984), 469 U.S. 824, 105 S.Ct. 101,83 L.Ed.2d 46; United States v. Martinez (C.A.11, 1992),949 F.2d 1117, 1119; United States v. Mejia (C.A.9, 1991), 953 F.2d 461,464-465; United States v. Wilson (C.A.11, 1990), 894 F.2d 1245,1254. In a motion to suppress, the trial court assumes the role of the trier of facts, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972, 981, certiorari denied (1992), 505 U.S. 1227,112 S.Ct. 3048, 120 L.Ed.2d 915, citing State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v. Clay (1972),34 Ohio St.2d 250; State v. Payne (1995), 104 Ohio App.3d 364, 367,662 N.E.2d 60, 61-62; State v. Robinson (1994), 98 Ohio App.3d 560,570, 649 N.E.2d 18, 25; State v. Rossiter (1993), 88 Ohio App.3d 162,166, 623 N.E.2d 645, 648. The weight of the evidence is also primarily for the trier of the facts. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Smith (1997), 80 Ohio St.3d 89, 105,684 N.E.2d 668, 685; State v. Brooks (1996), 75 Ohio St.3d 148, 154,661 N.E.2d 1030, 1036-1037; Fanning, 1 Ohio St.3d 19, 20,437 N.E.2d 583, 584-585.
Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Brooks, 75 Ohio St.3d at 154, 661 N.E.2d 1030;State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141,1143; United States v. Lewis (C.A.1, 1994), 40 F.3d 1325, 1332;State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9;State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Anderson (1995), 100 Ohio App.3d 688,691, 654 N.E.2d 1034. That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. Harris, supra, 98 Ohio App.3d at 546,649 N.E.2d at 9; Anderson, 100 Ohio App.3d at 691, 654 N.E.2d at 1036; see, also, Lewis, supra, 40 F.3d at 1332; Wilson, supra,894 F.2d at 1254. With these principles in mind, we turn to the issues raised by the parties in their briefs.
First Assignment of Error
 The trial court erred by denying Appellant's Motion to Suppress all the evidence flowing from Appellant's arrest.
In this assignment of error, Appellant asserts that Detective Stout immediately placed her under "arrest." The significance of such an assertion is not readily apparent in Appellant's brief, however, we discern that Appellant is arguing either Detective Stout was prohibited from making such an arrest or that Appellant was not properly advised of her Miranda warnings following the arrest.
Appellant's arguments relevant to this assignment of error are premised on the assertion that Detective Stout immediately placed Appellant under formal "arrest." We therefore initially endeavor to determine whether the encounter between Detective Stout and Appellant constituted a formal arrest sufficient to trigger the protections appurtenant thereto.
Appellant argues that because Detective Stout positioned his personal vehicle behind Appellant's so that Appellant could not back out of the driveway, because Detective Stout instructed Appellant to exit her vehicle and remain near the automobile, because Appellant was denied her requests to speak with her husband, because Detective Stout testified that Appellant was not free to leave, and because Detective Stout questioned Appellant, she was under custodial interrogation. We think the facts advanced by Appellant are typical of most traffic stops. That is, when a suspect is detained for the suspected violation of one or more traffic laws, including driving left of center and/or driving while under the influence of alcohol, the suspect is not free to drive away, is not permitted to interact with persons unrelated to the stop, is often times requested to exit his or her automobile, and is generally asked a moderate number of questions to determine his or her identity and to try to obtain information confirming or dispelling the officer's suspicion.
The United States Supreme Court has analogized the usual traffic stop to a "Terry stop." See, Berkemer v. McCarty (1984),468 U.S. 420, 82 L.Ed.2d 317, 104 S.Ct. 3138. The "nonthreatening character" of the detentions associated with a normal traffic stop and a Terry stop lead the Berkemer Court to hold that "persons temporarily detained pursuant to such stops are not `in custody' for the purposes of Miranda." Berkemer, 468 U.S. at 440,82 L.Ed.2d at 334-335, 104 S.Ct. at 3150. Consequently, unless and until "a suspect's freedom is curtailed to a `degree associated with formal arrest," the safeguards prescribed by Miranda are not applicable. Id., 468 U.S. at 440, 82 L.Ed.2d at 335,104 S.Ct. at 3150, citing California v. Behler (1983), 463 U.S. 1121,77 L.Ed.2d 1275, 103 S.Ct. 3517.
The facts presented by the case sub judice indicate that Appellant was not immediately subjected to treatment by Detective Stout that rendered her "in custody" such that she was entitled to the full panoply of protections prescribed by Miranda. Consequently, for purposes of Miranda, we hold that Appellant's freedom of action was not curtailed to a degree associated with formal arrest. We further hold that Detective Stout was not required to advise Appellant of her Miranda rights. Accordingly, any evidence obtained during Detective Stout's investigation or Sergeant Galyk's subsequent investigation is not suppressible on the grounds that it was obtained in contravention of Appellant's right to be advised of her Miranda rights.
We pause to note that were we to conclude that Appellant was "arrested" by Detective Stout, the result would be the same. The record demonstrates Appellant was not advised of her rights until after Detective Stout and Sergeant Galyk questioned her and after she submitted to at least four field sobriety tests. That is, Appellant was not advised of the Miranda warnings until she had been transported to the police station but before she submitted to the BAC Verifier Analysis. Appellant would have us hold that because she was not given Miranda warnings until after she was transported to the police station, all evidence obtained prior thereto should be suppressed.
Were we to agree that Appellant was arrested and should have been given Miranda warnings prior to any questioning and prior to the administration of any field sobriety tests, such a conclusion would be of little consequence. All that would be suppressible as a result of the failure to timely advise Appellant of her Miranda
warnings would be any statements made by Appellant.[1] The results of the field sobriety tests would still be admissible. More importantly, Appellant was advised of her rights prior to submitting to the BAC Verifier Analysis. Consequently, the results of that analysis would likewise still be admissible.
Having concluded that Detective Stout did not "arrest" Appellant, we next consider whether Detective Stout had the authority to detain Appellant until Sergeant Galyk arrived. R.C. § 2935.03(A) creates a mandatory duty for a sheriff or other peace officer to arrest and detain any "person found violating * * * a law of this state." This duty is not qualified by the duty status of the peace officer. An off-duty officer must arrest a person whom the officer observes committing a crime within the officer's territorial jurisdiction. A duly commissioned peace officer holds a public office upon a continuing basis and his or her obligation to preserve the peace is not conditioned upon a duty status. See, State v. Clark, 10 Ohio App.3d 308, 309,462 N.E.2d at 438, and the authorities cited therein wherein this Court held:
 An auxiliary police officer, who has been duly appointed and conferred full `police powers' by his municipality, has the power, regardless of `duty status,' to make misdemeanor arrests without a warrant pursuant to R.C. § 2935.03.
Inherent in this power is the authority of a police officer to investigate and detain an individual when the officer possess a reasonable, articulable suspicion based on objective facts that the suspect has committed, is committing, or is about to commit a crime. Consequently, there is no question that Detective Stout had the authority to detain Appellant even though Detective Stout was not wearing a police uniform and was operating his personal vehicle. That Detective Stout was not the officer who ultimately "arrested" Appellant is of no consequence. Detective Stout, though "off duty," was obliged to investigate Appellant's overt criminal activity.
Appellant's First Assignment of Error is without merit.
Second Assignment of Error
 The trial court erred when it refused to grant Appellant's Motion to Suppress the evidence flowing from Appellant's arrest where there was no probable cause to arrest the Defendant for driving while under the influence.
In this assignment of error, Appellant asserts that Sergeant Galyk lacked probable cause to arrest Appellant because Detective Stout was incompetent to testify as to what he observed. That is, for the first time Appellant asserts that because he was not in uniform and he was driving his personal vehicle, testimony provided by Detective Stout should be prohibited and therefore, Sergeant Galyk lacked probable cause to arrest Appellant. More specifically, Appellant argues that without the testimony of Detective Stout, Sergeant Galyk did not see Appellant drive the car, did not observe her in the car, did not even observe the vehicle running, and therefore "had no independent evidence that she had been driving a vehicle at all."
We first consider whether detective Stout was competent to testify at the suppression hearing. Generally, an individual is presumed competent to testify. In the present case, Appellant failed to object to Detective Stout's testimony at the suppression hearing. That is, no objection was made on the ground of statutory incompetency.
This Court has recognized that persons entitled to object to the competency of a witness may waive their objection and permit the witness to testify. State v. Clark (1983), 10 Ohio App.3d 308,311. Consequently, the question of incompetency cannot later be raised to prevent the witness from testifying in the same case. Here the object of the motion to suppress was the suppression of testimony at trial. However, no objection was made to the testimony of Detective Stout at the suppression hearing on the ground of incompetency. No objection having been raised to his testimony at the suppression hearing, objection thereto was waived, and his testimony establishing the validity of the arrest was properly before that court. Accordingly, we hold there was a waiver of objection to the competency of the witness to testify at the suppression hearing.
Nor do we perceive any plain error in this regard. R.C. § 4549.14 states:
 Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.
Evid.R. 601 similarly states:
Every person is competent to be a witness except:
* * *
 (C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.
Appellant argues that the above language prohibited the testimony of Detective Stout at the suppression hearing. We disagree.
The intent of these respective provisions was to create uniformity in police work, and to prevent speed traps and other similar abuses in the enforcement of traffic laws. Dayton v.Adams (1967), 9 Ohio St.2d 89, 223 N.E.2d 822; Columbus v. Stump
(1974), 41 Ohio App.2d 81, 322 N.E.2d 348; State v. Huth (1986),24 Ohio St.3d 114. R.C. § 4549.14 and Evid.R. 601 essentially prevent on-duty police officers from using unmarked cars, if the officer is on duty for the main purpose of enforcing traffic laws.
It is undisputed that Detective Stout was "off duty" and traveling in his private vehicle at the time he observed Appellant driving erratically. Detective Stout was not operating a speed trap, nor did he attempt to pull Appellant over using an unmarked vehicle. When Appellant stopped of her own accord, Detective Stout approached Appellant and identified himself as a police officer. Detective Stout then called for an on-duty police officer to respond to the scene. Therefore, we conclude that Detective Stout was not on duty for the purpose of enforcing traffic laws within the statutory meaning of R.C. § 4549.14 or Evid. R 601. Since the statutory language requires that all elements be met in order to render an officer incompetent to testify, no plain error exists.
Appellant's Second Assignment of Error is without merit.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the Bellefontaine Municipal Court.
Judgment affirmed.
 ______________________________ BRYANT, PRESIDING JUDGE
 WALTERS and SHAW, JJ., concur.
[1] Appellant stated to both Detective Stout and Sergeant Galyk that she had been drinking earlier in the day.