THE STATE OF OHIO, APPELLEE, *v.* MASSEY, APPELLANT.

(No. 5-75-8—Decided December 12, 1975.)

Mr. J. Stanley Needles, for appellee.
Mr. Patterson W. Higgins, for appellant.

COLE, P. J. This is an appeal from a judgment of conviction and sentence for the offense of aggravated robbery. Briefly, the factual situation concerns an armed robbery perpetrated by two black males at a carry-out located in the city of Findlay. An all points bulletin was put out over the police radio. About ten minutes or so later a highway patrolman noticed a vehicle moving relatively slowly (about 45 miles per hour) on Interstate Route 75, north of Findlay near the Wood County line. There were three black males in the vehicle and each of the two passengers acted in an unusual manner as he passed the vehicle. The patrolman stopped the vehicle by signal and two passengers got out whose description generally tallied with that on the all points bulletin. There was a request by the patrolman, now joined by two other patrolmen, to search the car and according to their testimony consent was given. A revolver was found under the front seat and the suspects were then held for an official arrest by the Findlay police who arrived and took the men into custody. The defendant, appellant herein, was the driver.

Subsequently, a search warrant predicated upon an affidavit containing generally the foregoing information was issued and clothing resembling in detail the clothing described by the robbery victims was found in the car as well as money.

The defendant moved to suppress all the evidence as to the two searches and this motion was overruled. Basically this appeal is directed to the assertion that this action was error by the trial court. The assignments of error are as follows:

"I. There was no probable cause to stop the Defendant and the subsequent search of his vehicle violated the Fourth Amendment to the United States Constitution and the Constitution of the State of Ohio and the trial court should have suppressed the evidence obtained as a result thereof.

"II. The alleged consent given by the Defendant violated the Fourth Amendment to the United States Constitution and the trial court should have suppressed any evidence obtained as a result of the subsequent search.

"III. The trial court errored [sic] in not suppressing the evidence obtained as a result of the warrant in that the warrant was issued based on illegal evidence.

"IV. The evidence presented to the trial court at the Motion to Suppress Hearing was insufficient to support a finding that the evidence not be excluded."

Actually these contentions are quite interrelated and the contention basic to the entire argument is that the initial stopping of defendant's car by the patrolman was a violation of his constitutional rights and all that ensued was tainted by this alleged illegality and could be considered "fruit of the poisoned tree." We therefore address this problem first.

It is axiomatic that to effect an arrest the arresting officer must have probable cause both to believe that a crime has been committed and that the one apprehended in fact committed the crime. However, an arrest is a special variety of restraint imposed on a person and entails both the intent by the arresting officer to effect an arrest and the physical restraint imposed.

In 5 Ohio Jurisprudence 2d 18, Arrest, Section 2, it is said:.

"An arrest is the taking, seizing or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. * * * However, the mere accosting and making inquiries of a person by an officer does not constitute an arrest. * * * "

But, there may be investigatory restraints, which amount to less than an arrest made with the intent to ultimately charge a person with the commission of a crime. Stopping a person either walking or riding with intent of simply seeking information would be examples of this.

Nevertheless, the Supreme Court considers such investigatory delays and restraints to be seizures, subject to the provisions of the Fourth Amendment to the United States Constitution. In *Davis* v. *Mississippi* (1969), 394 U. S. 721, the court states: "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' "

Thus, the Fourth Amendment restrictions apply to all forms of restraint encompassed by the constitutional term "seizure." There, the conduct prohibited is "unreasonable searches and seizures." It is, however, necessary that we do not confuse the specific requirements of reasonable or probable cause for an arrest with reasonable or probable cause for these lesser restraints. Moreover, we must not confuse the conditions upon the authority to make an arrest for probable cause with those constitutionally imposed for lesser restraints. The key concept is found in the word "unreasonable." Reasonable grounds for restraint lesser than an arrest may exist predicated both upon the particular circumstances and the nature of the actual restraint which is imposed.

This constitutional area for restraint lesser than an arrest but predicated upon reasonable grounds inherent in

the underlying situation has been fully recognized by the United States Supreme Court in the two cases of *Terry* v. *Ohio* (1968), 392 U. S. 1, and *Sibron* v. *New York* (1968), 392 U. S. 40. In the first case, the stopping of a person and a "frisking" for weapons was deemed reasonable under the existing circumstances. However, it is clear that there was no "probable cause" to believe a crime had been committed or that the defendant had committed it. The court stated, at page 22:

"One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. * * * "

It stated further, at page 24:

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

The court further carefully distinguishes the degree of intrusion upon liberty in noting that an arrest is quite different from a purely protective search for weapons.

However, in the *Sibron* case, *supra,* on the factual situation presented, the court concludes there were no reasonable grounds and the search was in scope and character unrelated to the alleged justification.

These cases concerned protective searches. However, it is eminently clear such activity entails a restraint and a detention. In later federal cases, factual situations relating both to the stopping of automobiles and the questioning of occupants have been dealt with.

In *United States* v. *Harflinger* (C. A. 8, 1971), 436 F. 2d 928, 932, the court, basing its opinion in part on the *Terry* case, *supra,* states:

"The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of a routine investigation, and any incriminating evidence which comes to the officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest."

Again, in *Carpenter* v. *Sigler* (C. A. 8, 1970), 419 F. 2d 169, the test of reasonableness was applied. It will be noted that in neither case was there traditionally conceived probable cause, since it was not known that any crime had been perpetrated.

In *United States* v. *Nicholas* (C. A. 8, 1971), 448 F. 2d 622, the court stated, at 624:

"We think it clear that the police action here amounted to a 'seizure' within the meaning of the Fourth Amendment as interpreted by *Terry* and *Carpenter*. Even though Nicholas may have been physically free to drive away when the officers stationed themselves on either side of Nicholas's car and flashed their badges, we find that the actions of the officers constituted sufficient show of authority to restrain Nicholas's freedom of movement.

"We recognize that in *Terry* the defendant was stopped and frisked, and that here the search occurred only after the officers smelled marijuana, which the government contends gave them probable cause to arrest. But we do not think this distinction a relevant one. The Supreme Court in *Terry* 'emphatically rejected' the notion that police conduct amounting to a stop is outside the purview of the Fourth Amendment. Thus, the 'seizure' of Nicholas must be judged according to *Terry* standards.

"In determining whether the seizure of Nicholas violated his Fourth Amendment rights, we are required, under *Terry* to make a dual inquiry:

"(1) whether the officer's action was justified at its inception, and

"(2) whether it was reasonably related in scope to the circumstances which justified the inference in the first place.

"In undertaking the first step in this dual inquiry, we follow the standard laid down by the Supreme Court for determining whether the 'seizure' of Nicholas was justified:

"'(I)n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' *Terry* v. *Ohio, supra* at 21, 88 S. Ct. at 1880. See also *United States* v. *Harflinger, supra.*"

In summary then, the facts available to and known by the police must be such as to reasonably justify the detention to the extent it is initially imposed. Thus, both the fact and the scope of the detention must be reasonable.

Applying these principles to the facts herein, we note that the highway patrol officer who caused the car to initially stop did so with the following items of information available and known to him.

1. There had been an armed robbery in Findlay shortly before;

2. This robbery had been committed by two black males, one of whom had a moustache, and each having certain characteristics as to height and weight;

3. This car was on a main road leading away from the city of Findlay at about the distance the elapsed time would place a car driven by a person leaving Findlay after the robbery;

4. The car was traveling abnormally slowly for interstate traffic;

5. Two occupants of the car, as the officer passed, acted in an unusual manner;

6. The passengers of the car were two black males and the driver (the appellant) was a black male.

We think this was a reasonable basis for an investiga-

tory stop limited in scope to determine the identity of the occupants.

At this point, we enter what one court has referred to as an escalating situation in which new facts create new plateaus of knowledge ultimately culminating in probable cause to believe the occupants of the car had perpetrated the crime.

On stepping from the car, one occupant was seen to be a black male with a moustache and the general requirements of height and weight were met. The officers testify that the defendant gave permission for the car to be searched and this testimony was sufficient to justify the court's finding that such consent to search was given and given voluntarily.

The initial step of the search revealed the existence of a gun under the front seat. At this point there was sufficient evidence to constitute probable cause and justify arrest.

The subsequent search warrant was issued on the basis of the information heretofore related and constituted probable cause for a search of the balance of the car revealing the incriminating clothing.

Thus, progressing in stages, the incident began as a simple stop for ascertaining identity and escalated by the accumulation of other items of evidence into a full blown probable cause for arrest and the issuance of a search warrant.

For these reasons we find none of the errors assigned to be well taken.

*Judgment affirmed.*

MILLER and GUERNSEY, JJ., concur.