[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 504.]

THE STATE OF OHIO, APPELLEE, *v*. HEINS, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v*. CALHOUN, APPELLANT.

[Cite as *State v. Heins*, 1995-Ohio-208.]

*Evidence—Witnesses—Competency—State Highway Patrol officer who conducts speed checks for purpose of monitoring compliance with traffic laws is competent to testify under Evid.R. 601(C) and R.C. 4549.14 and 4549.16.*

A State Highway Patrol aircraft that is operated for the purpose of conducting speed checks is not a "motor vehicle," and therefore does not fall within the purview of Evid. R. 601(C) and its companion statutes, R.C. 4549.14 and 4549.16.

(Nos. 94-686 and 94-747—Submitted April 26, 1995—Decided July 19, 1995.)

APPEALS from the Court of Appeals for Ashland County, Nos. CA-1058 and CA-1060.

———————————

Case No. 94-686

{¶ 1} On May 20, 1993, at approximately 12:46 p.m., appellant, Kenneth J. Heins, was charged with speeding. The offense occurred in Ashland County while Heins was driving a commercial tractor-trailer north on Interstate 71. William R. Watkins, a trooper pilot assigned to the Aviation Section of the Ohio State Highway Patrol, had been conducting routine speed checks from the air over Interstate 71 when he observed appellant's vehicle. Using a stopwatch and a standard mathematical formula to compute a driver's speed based upon the time it takes the driver to travel between a series of white lines painted on the highway, Watkins determined that Heins was driving sixty-six miles per hour in a fifty-five mile per hour zone. Watkins radioed this information to Trooper Carl L. Buris, who was positioned on the ground. Buris thereafter stopped Heins and issued him a citation

for traveling at a speed in excess of the posted limit in violation of R.C. 4511.21(D)(3).

{¶ 2} Heins entered a plea of not guilty to the charge of speeding. Prior to trial, Heins filed a motion *in limine* to exclude the testimony of Watkins, on the grounds that the latter was incompetent to testify under Evid. R. 601(C). The trial judge overruled the motion, and the case proceeded to a bench trial. Heins again objected to Watkins' testimony during the course of the trial, but the trial judge rejected Heins' argument. After considering all of the admitted evidence, the trial court found Heins guilty of speeding and assessed him a twenty-five dollar fine plus costs. The court of appeals affirmed the conviction.

Case No. 94-747

{¶ 3} On May 20, 1993, approximately twelve minutes after Heins was cited for speeding, appellant, William C. Calhoun, was similarly stopped. Trooper Watkins, continuing to conduct speed checks above Interstate 71, observed Calhoun traveling north through Ashland County in a commercial tractor-trailer. Employing the same technique he had used to determine Heins' speed, Watkins calculated that Calhoun was driving seventy-five miles per hour. This information was radioed to Trooper Buris on the ground, who then stopped Calhoun's vehicle and issued a citation for traveling at a speed in excess of the fifty-five miles per hour limit in violation of R C. 4511.21(D)(3).

{¶ 4} Calhoun entered a plea of not guilty to the charge of speeding. Prior to trial, Calhoun filed a motion *in limine* to exclude the testimony of Watkins on the grounds that the officer was incompetent to testify under Evid. R. 601(C). The trial judge overruled the motion, and a trial to the bench ensued. Calhoun again objected to Watkins' testimony during trial, but the trial judge rejected his argument. After considering all of the admitted evidence, the trial court found Calhoun guilty of speeding and assessed him a fifty-dollar fine plus costs. The court of appeals affirmed the conviction.

**{¶ 5}** The cause is now before this court pursuant to the allowance of discretionary appeals. These cases have been consolidated for purposes of final determination.

———————————

*W. David Montague*, Assistant Director of Law, for appellee.

*Mason, Mason, Sullivan & Mason* and *Thomas L. Mason*, for appellants.

———————————

**ALICE ROBIE RESNICK, J.**

**{¶ 6}** The sole proposition raised for our review is whether a State Highway Patrol officer who conducts speed checks from an aircraft for the purpose of monitoring compliance with traffic laws is competent to testify under the dictates of Evid. R. 601(C) and various sections of R.C. Chapter 4549. For the reasons which follow, we hold that such an officer is competent to testify.

**{¶ 7}** Evid. R. 601 provides in pertinent part:

"Every person is competent to be a witness except:

"***

"(C)  An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute."

**{¶ 8}** The Staff Note to Evid. R. 601(C) indicates that this court adopted the rule simply as a restatement of R.C. 4549.14 and 4549.16, and that the rule preserves the provisions of each statute. R.C. 4549.14 states that: "Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any

prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code."

{¶ 9} R.C. 4549.13, in turn, provides that: "Any motor vehicle used by a member of the state highway patrol or by any other peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color and shall be equipped with, but need not necessarily have in operation at all times, at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle. The superintendent of the state highway patrol shall specify what constitutes such a distinctive marking or color for the state highway patrol." The interplay between the two statutes is such that R.C. 4549.14 essentially creates the sanction to be imposed for a failure to comply with R.C. 4549.13.

{¶ 10} R.C. 4549.15 and 4549.16 are similarly related. The provisions of R.C. 4549.15 and 4549.16 require that an officer whose primary duty is to arrest or assist with the arrest of individuals who violate traffic laws must wear a distinctive uniform as prescribed by the State Highway Patrol. An officer who fails to comply with R.C. 4549.15 will be deemed incompetent to testify as a witness in any prosecution against an arrested person pursuant to R.C. 4549.16.

{¶ 11} Through the enactment of these statutes, the legislature demonstrated an intent to provide uniformity in traffic control and regulation in an effort to make driving safer within Ohio's political subdivisions. *Dayton v. Adams* (1967), 9 Ohio St.2d 89, 38 O.O.2d 223, 223 N.E.2d 822. "It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he [or she] was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring police officers on traffic duty to be identified clearly." *Columbus v. Murchison* (1984), 21 Ohio

App.3d 75, 76, 21 OBR 79, 81, 486 N.E.2d 236, 238. In addition to issues of safety and public welfare, the legislature also adopted R.C. 4549.13 through 4549.16 in an attempt to curb the use of speed traps within municipalities. See *Adams*, 9 Ohio St.2d at 90, 38 O.O.2d at 224, 223 N.E.2d at 824.

{¶ 12} Appellants in the case *sub judice* assert that the use of speed checks by the highway patrol clearly violates the legislature's intended ban on speed traps, and therefore such practice is impermissible. In reaching this conclusion, appellants contend that a plain reading of Evid. R. 601(C) indicates that in order for an officer, whose primary responsibility is the enforcement of traffic laws, to be competent to testify in connection with a traffic violation, the officer must have operated a properly marked motor vehicle at the time he or she issued the citation. An airplane, appellants argue, does not qualify as a motor vehicle under the rule. Therefore, Watkins was incompetent to testify in this case.

{¶ 13} The interpretation of Evid. R. 601(C) that appellants urge this court to adopt would lead to an absurd application of the rule. Appellants' position essentially means that to be deemed competent to testify, every officer who is assigned to traffic enforcement must use a motor vehicle when issuing citations. As such, an officer assigned to traffic duty who patrols on foot or on horseback would be precluded from testifying in connection with the citations the officer issues. Embracing this view would effectively ignore the plain meaning of R.C. 4549.14 and the fact that this court adopted Evid. R. 601(C) as a restatement of R.C. 4549.14 and 4549.16. Staff Note to Evid. R. 601(C). Neither statute supports the result suggested by appellants.

{¶ 14} The better course of reasoning in this case is to read Evid. R. 601(C) in light of its companion statutes and to determine whether airplanes fall under the purview of each. Both Evid.R. 601(C) and R.C. 4549.14 refer to the use of "motor vehicles," but neither includes a definition of the phrase. We therefore turn our

consideration to other sections in R.C. Title 45 in order to ascertain whether aircraft should be included in the general definition of "motor vehicle."

{¶ 15} As a starting point, R.C. 4501.01[1] provides: "As used in this chapter and Chapters 4503., 4505., 4507., 4511., 4513., 4515., and 4517. of the Revised Code, and in the penal laws, except as otherwise provided:

"(A) 'Vehicles' means everything on wheels or runners, including motorized bicycles *** [with certain exceptions which are not relevant to this case].

"(B) 'Motor vehicle' means any vehicle, including manufactured homes and recreational vehicles, that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires *** [with numerous exceptions which are not relevant to this case]."

{¶ 16} Another definition appears in R.C. 4511.01, which states: "As used in this chapter and in Chapter 4513. of the Revised Code:

"(A) 'Vehicle' means every device, including a motorized bicycle, in, upon, or by which any person or property may be transported or drawn upon a highway *** [with certain exceptions which are not relevant to this case].

"(B) 'Motor vehicle' means every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires *** [with certain exceptions which are not relevant to this case]."

{¶ 17} R.C. 4549.41 states: "As used in sections 4549.41 to 4549.51 of the Revised Code:

"***

"(B) 'Motor vehicle' means any vehicle driven or drawn by mechanical power for use on the public streets, roads, or highways."

---

1. The amendment to R.C. 4501.01, Am. Sub. S. B. No. 191, effective October 20, 1994, is not relevant to our discussion herein.

**{¶ 18}** Finally, R.C. Chapter 4561 includes numerous statutes which apply to aeronautics. R.C. 4561.01 provides: "As used in sections 4561.01 to 4561.16, inclusive, of the Revised Code,

"(A) 'Aviation' means transportation by aircraft; operation of aircraft; the establishment, operation, maintenance, repair, and improvement of airports, landing fields, and other air navigation facilities; and all other activities connected therewith or incidental thereto.

"(B) 'Aircraft' means any contrivance used or designated for navigation or flight in the air, excepting a parachute or other contrivance for such navigation used primarily as safety equipment."

**{¶ 19}** After closely reviewing the above definitional sections, we conclude that while no section in R.C. Title 45 specifically defines "motor vehicle," as it appears in R.C. 4549.13 and 4549.14, that phrase is generally meant to refer to land-operated vehicles. The enactment of R.C. Chapter 4561 to specifically deal with aeronautics indicates an intent by the legislature to separate aircraft from other vehicles. Furthermore, we find that the context in which the phrase appears in R.C. 4549.13 indicates that the statute is meant to apply to land-operated vehicles. "Besides requiring a police vehicle to be distinctively marked or of a distinctive color, the statute also requires at least one flashing, oscillating or rotating colored light mounted outside on top of the vehicle. It would not make sense to make such a requirement of an aircraft. Even if an aircraft should mount such a light, there is no way anyone on the ground could see it during the daylight hours. The same would apply if the aircraft had been marked. A person who is driving on a highway has an obligation to keep his or her eyes on the roadway, the traffic, pedestrians, and the surroundings, but certainly not on the sky in search of flying aircraft." *State v. Osting* (June 27, 1988), Crawford App. No. 3-86-21, unreported, 1988 WL 68698; see, also, *State v. Foster* (1992), 84 Ohio App.3d 214, 616 N.E.2d 595.

**{¶ 20}** Based upon the foregoing, we hold that a State Highway Patrol aircraft that is operated for the purpose of conducting speed checks is not a "motor vehicle," and therefore does not fall within the purview of Evid. R. 601(C) and its companion statutes, R.C. 4549.14 and 4549.16. As such, we find that Watkins was competent to testify concerning the events surrounding appellants' speeding citations.

**{¶ 21}** The judgments of the court of appeals are affirmed.

*Judgments affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____