OPINION
Defendant-appellant and cross-appellee, Nicholas B. Horton, appeals his conviction in the Clermont County Court of Common Pleas for driving while under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(3).
In the early evening hours of October 11, 1999, Pierce Township Police Officer Victor Vismara was driving home in his personal vehicle on Old State Route 74 in Union Township, Clermont County. Vismara was off duty at the time and was not in uniform. While driving, Vismara observed a pick up truck driven by appellant go off and then back onto the road. Both appellant and Vismara turned left onto Tealtown Road. Appellant was now behind Robert Randolph, a detective from the Cincinnati Police Department. Randolph was off duty at the time, not in uniform, and was driving his personal vehicle. Following appellant was Vismara.
While on Tealtown Road, both Vismara and Randolph observed appellant go left of center twice. Vismara testified that the second left-of-center episode forced an oncoming car to pull over to avoid a head-on collision with appellant. Vismara contacted the Union Township Police Department on his cellular phone and advised them he was following a potential drunk driver. Randolph testified that appellant was tailgating him so closely that he could not see the front of appellant's truck. Fearing for the safety of his wife and their child who were traveling with him, and fearing appellant might "rear-end" him, Randolph decided to leave Tealtown Road by driving straight onto Balwin Road at a point where Tealtown Road makes a very sharp left turn. Appellant continued on Tealtown Road, barely negotiating the turn, followed by Vismara. Appellant continued driving left of center, "float[ing] left of center [before] abruptly pull[ing]" his vehicle back into the right lane.
Believing they were about to leave Union Township for Miami Township, Vismara contacted the Clermont County Communications Center on his cellular phone and advised them about appellant. Appellant and Vismara then both turned right onto Round Bottom Road. At the intersection of Round Bottom Road and State Route 50, appellant failed to stop and rear-ended Robert Baugh's vehicle which was stopped at a red light. Vismara stopped his car right behind appellant's truck. Randolph, who had gotten back onto Tealtown Road, caught up with appellant and Vismara at the scene of the accident. Randolph stopped his car next to appellant's truck to prevent him from pulling away.
While waiting for the police to arrive, Vismara took appellant's car keys. Although Vismara told appellant he should remain in his truck for safety reasons (due to the rush hour traffic conditions), appellant exited his truck and leaned against it. Randolph testified that appellant could only stand up with the support of his truck. Appellant had slurred speech which was at times unintelligible, bloodshot eyes, and a strong odor of alcohol. Randolph and Baugh stood in close proximity to appellant until the police arrived. So did Vismara, until traffic became a problem and he began directing traffic.
Miami Township Police Officer Thomas Risk was dispatched to the scene of the accident. After talking to Vismara and Randolph, Officer Risk approached appellant who placed his hands out and stated "I had too much to drink." While conversing with him, the officer detected a very strong odor of alcohol about appellant's person and noticed that appellant had extremely glassy and bloodshot eyes and extremely slurred speech. Appellant could not perform the "finger to nose" field sobriety test and was unable to recite the alphabet past the letter "l." Again, appellant placed his hands out. The officer arrested appellant for DUI and for driving while under a suspended license. While appellant at first refused to take a breath test, he asked to take one about an hour later. The results of the test revealed that appellant had a breath concentration of .258 grams per two hundred ten liters of breath. It was later discovered that this was appellant's fifth DUI offense in six years.
Appellant was indicted on November 3, 1999 on two counts of DUI in violation of R.C. 4511.19(A)(1) and (3) respectively, and one count of driving while under a suspended license in violation of R.C. 4507.02(B)(1). Appellant subsequently filed a motion to suppress, or in the alternative to dismiss, on the ground that his detention by Vismara, an off-duty officer outside of his jurisdiction, violated R.C. Chapter 2935. In a decision dated January 10, 2000, and by judgment entry filed January 12, 2000, the trial court overruled the motion. While the trial court agreed that Vismara's warrantless arrest of appellant violated R.C. Chapter 2935, it nevertheless found that Vismara had probable cause to arrest appellant, hence there was no constitutional violation. Thereafter, appellant filed a motion in limine to prohibit the testimony at trial of the two off-duty police officers, Vismara and Randolph, pursuant to Evid.R. 601. This motion was also overruled by the trial court. On February 17, 2000, appellant entered a no contest plea to one count of DUI in violation of R.C. 4511.19(A)(3), a fourth degree felony, and one count of driving under a suspended license in violation of R.C.4507.02(B)(1), a first degree misdemeanor. The trial court subsequently accepted appellant's no contest plea and sentenced him accordingly.
This appeal follows in which appellant raises three assignments of error. Plaintiff-appellee, the state of Ohio, cross-appealed, asserting one assignment of error. Appellant's first assignment of error and the state's cross-assignment of error both deal with the same issue, and therefore will be discussed together. Each of the other assigned errors will be discussed separately.
In his first assignment of error, appellant argues that it was error for the trial court to deny his motion to dismiss when he was unlawfully arrested for an apparent misdemeanor DUI by Vismara, an off duty police officer outside of his jurisdiction, in violation of R.C. 2935.03(A) and (D), and 2935.04. Appellant contends that once the trial court found that the warrantless arrest was a statutory violation, there was no need for the court to consider whether a constitutional violation occurred. In its cross-assignment of error, the state argues the trial court erred by finding that appellant was unlawfully arrested in violation of R.C. Chapter 2935.
Pursuant to R.C. 2935.04, when a felony has been committed, or there is reasonable ground to believe a felony has been committed, any person without a warrant may arrest an individual provided he or she believes the individual is guilty of the offense. With regard to law enforcement officers, an officer without a warrant may, within his jurisdictional boundaries, arrest an individual who has committed a misdemeanor or a felony. R.C. 2935.03(A)(1). When outside of his jurisdiction, however, an officer may pursue and without a warrant arrest an individual only if (1) the pursuit takes place within a reasonable time after the offense is committed, (2) the pursuit is initiated within the limits of the officer's jurisdiction, and (3) the offense is either a felony or a first or second degree misdemeanor (or any offense for which points are chargeable under R.C. 4507.021(G)). R.C. 2935.03(D).
Before this court can find that there was an "illegal arrest," it must first be demonstrated that there was, in fact, an arrest by Vismara. R.C. 2935.01, which defines critical terms used in R.C. Chapter 2935, the Ohio arrest statute, does not define the word "arrest" and thus offers no guidance. However, the Supreme Court of Ohio has held that "[a]n arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v.Darrah (1980), 64 Ohio St.2d 22, 26.
"[A]n arrest is a special variety of restraint imposed on a person and entails both the intent by the arresting officer to effect an arrest and the physical restraint imposed." State v. Massey (1975),49 Ohio App.2d 272, 273. "An arrest is the taking, seizing or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." Id. at 274.
Upon thoroughly reviewing the record, we find that Vismara did not arrest appellant as the foregoing prerequisites of an arrest have not been met. The record shows that while Vismara followed appellant, he never pulled appellant over. Rather, appellant's truck was already stopped when Vismara stopped his own car behind appellant's truck. Although Vismara subsequently approached appellant and stood in close proximity to him while they were waiting for Miami Township police to arrive, Vismara never restrained appellant in any way. There is no evidence in the record that Vismara ever manifested an intent to arrest or take appellant into custody.
We are mindful of this court's decision in State v. Finch (1985),24 Ohio App.3d 38, in which we held that a law enforcement officer's removal of a defendant's car keys effectively placed the defendant under arrest. However, this case is factually distinguishable from the case at bar in two respects. First, the arresting officer in Finch was on duty when she removed the defendant's car keys. Second, the officer's testimony at the suppression hearing indicated that she had no intention of permitting the defendant to drive away. By contrast, Vismara testified during the suppression hearing that had appellant attempted to leave, he (Vismara) "would have followed [appellant] and kept him in [his] sight so [he] could report it to the police." This statement clearly shows that Vismara had no intent to, and did not arrest appellant.
In addition, the record is silent as to appellant's feelings with regard to his ability to leave. Vismara testified that while appellant at first attempted to leave the scene of the accident, once he voluntarily exited his truck, appellant "basically leaned up against the vehicle and didn't * * * make any attempt to go anywhere at that point."
We therefore conclude that appellant was never, at any point during his roadside encounter with Vismara, under arrest. Indeed, appellant was not actually arrested until later when Officer Risk arrived on the scene of the accident. The trial court therefore did not err by denying appellant's motion to dismiss.[1] Appellant's first assignment of error is overruled. The state's cross-assignment of error is well-taken and sustained.
In his second assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Appellant contends that the evidence flowing from his unlawful arrest by Vismara should have been suppressed by the trial court.
Appellant does not argue on appeal that he was unlawfully arrested by Officer Risk. In light of our holding with respect to the first assignment of error that appellant was not arrested, let alone unlawfully, by Vismara but was arrested by Officer Risk, appellant's second assignment of error is moot and therefore overruled. See App.R. 12(A)(1)(c).
In his third assignment of error, appellant argues that it was error for the trial court to deny his motion in limine because both Randolph and Vismara were incompetent to testify. Citing this court's decision inState v. Heatherly (Dec. 21, 1992), Butler App. No. CA92-05-080, unreported, appellant contends that "[a]n off-duty, non-uniformed police officer, who comes back on duty for the specific purpose of enforcing the traffic laws, is incompetent to testify." As a result, appellant argues, the testimony of both Randolph and Vismara should have been excluded.
At the outset, we point out that appellant did not file his motion inlimine until after the trial court denied his motion to dismiss and/or suppress following the suppression hearing. The purpose of a motion in limine is to anticipate and avoid injection into the trial of a potentially prejudicial matter which is irrelevant and inadmissible.Rinehart v. Toledo Blade Co. (1985), 21 Ohio App.3d 274, 278. It is thus prospective in nature.
Which leads us to the following inquiry:
 how can appellant introduce the officers' testimony at the suppression hearing, then claim that the trial court abused its discretion in allowing the testimony. Appellant does not argue that the trial court abused its discretion in finding the witnesses competent and then permitting their testimony at the trial stage because there was no trial. Appellant, however, entered a no contest plea that was accepted by the trial court.
Cleveland v. Carrie (Sept. 19, 1996), Cuyahoga App. No. 69054, 1996 Ohio App. LEXIS 4066, at *6-7, unreported. In the interest of justice, we will nevertheless review appellant's third assignment of error.
R.C. 4549.14 and 4549.16 and Evid.R. 601(C) provide that an officer who arrests, participates or assists in the arrest of a person charged with violating the motor vehicle or traffic laws of this state is incompetent to testify as a witness in any prosecution against the arrested person if at the time of the arrest, the officer was on duty for the exclusive purpose of enforcing motor vehicle or traffic laws and was not using a properly marked motor vehicle as defined by the statute, or was not wearing a legally distinctive uniform as defined by the statute.
The issue before the trial court, and now this court, is whether Vismara and Randolph were "on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws * * * at the time of the arrest[.]" In determining their status, we are mindful of the legislative intent behind the foregoing provisions, that is, the creation of uniformity in police work and the prevention of speed traps and other similar abuses in traffic law enforcement, such as the forcing off the road of a frightened motorist by a stranger. See State v. Heins (1995),72 Ohio St.3d 504; State v. Huth (1986), 24 Ohio St.3d 114; Dayton v.Adams (1967), 9 Ohio St.2d 89. R.C. 4549.14 and 4549.16 and Evid.R. 601(C) essentially prevent an on duty police officer from using unmarked vehicles or wearing civilian clothing if the officer is on duty for the main purpose of enforcing traffic laws. State v. Hemmer (May 25, 2000), Logan App. No. 8-99-20, 2000 Ohio App. LEXIS 2254, at *15, unreported.
In Heatherly, a police constable was off duty, but in uniform, and was driving his personal vehicle to his residence when he observed the defendant driving erratically. The defendant stopped his car after the constable flashed his headlights and honked his horn. Upon smelling an odor of alcohol on the defendant's breath and administering a series of field sobriety tests, the constable informed the defendant he was detaining him until the arrival of an on duty officer. The defendant was eventually arrested for DUI. The defendant filed a motion in limine to prevent the testimony of the constable under R.C. 4549.14. The motion was denied. This court reversed the trial court's decision on the grounds that the constable came on duty after he began to follow the defendant, and that following a vehicle in an unmarked car constituted enforcement of traffic laws under R.C. 4549.14. Heatherly, Butler App. No. CA92-05-080, unreported, at 4-5.
In Hamilton v. Jacobs (1995), 100 Ohio App.3d 724, this court, without abandoning its ultimate holding in Heatherly, overruled the decision to the extent it "concluded that following a vehicle in an unmarked car, without more, constitute[d] enforcement of traffic laws within the meaning of R.C. 4549.14." Id. at 729. This court found that "[t]his does not offend the legislative intent, which was to curb the use of speed traps and to prevent the `unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger.'"Id.
This court's analysis in Heatherly was based upon the concept of an off duty law enforcement officer coming "back on duty." By overrulingHeatherly, we believe this court in Jacobs implicitly rejected the "back on duty" concept. For the reasons that follow, we expressly reject this concept today.
The concept of being "back on duty" is based upon the reasoning that once an off-duty officer begins to act like a police officer upon observing what he believes was a traffic violation, the officer comes back "on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws[.]" Under this analysis, an officer is "instantly and metaphysically always * * * on duty as soon as he or she undert[akes] any law enforcement activities." State v. Butler (1991),77 Ohio App.3d 143, 146. The absurd result is that "if an `off duty' police officer witnesses a hit-skip accident, he is incompetent to testify about the accident if he chooses to pursue and help effectuate an arrest of the fleeing violator because, by doing so, he would come back on duty for the sole purpose of effecting a traffic arrest. The alternative would be to let the hit-skip driver flee." State v. Stevens (Dec. 20, 1993), Stark App. No. CA-9289, 1993 Ohio App. LEXIS 6319, at *11, fn. 3, unreported (Hoffman, J., dissenting). We do not believe such was the intent of the legislature in enacting R.C. 4549.14 or 4549.16.
The Supreme Court of Ohio has defined the phrase "on duty exclusively or for the main purpose of enforcing motor vehicle or traffic laws" as used in R.C. 4549.14 or 4549.16 as "refer[ring] to the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." Huth, 24 Ohio St.3d at syllabus. It is well-established that whether or not working his assigned shift, a police officer holds office on a continuing basis with a continuing right and obligation to enforce the law. See State v. Glover (1976),52 Ohio App.2d 35. This ongoing obligation includes the enforcement of traffic laws, but it is not exclusively or primarily for that purpose.
As already noted, the intended purpose of R.C. 4549.14 and 4549.16 and Evid.R. 601(C) was to provide uniformity in traffic control and to curb the use of speed traps. The purpose was certainly not to inhibit all police officers, except those primarily on traffic duty, from arresting a person violating traffic or motor vehicle laws. As the trial court aptly observed in its decision denying appellant's motion in limine, "[n]o rational purpose is served by requiring an off-the-clock officer to merely follow the lawbreaker until an on-the-clock officer, who is in uniform and in a properly marked vehicle, arrives." By contrast, by arresting, participating or assisting in the arrest of the lawbreaker, an off duty officer is merely attending to his public obligation as a police officer. We fail to see how this offends any of the public policies underlying R.C. 4549.14 or 4549.16 or Evid.R. 601(C). We therefore hold that simply because an off duty police officer arrests, participates or assists in the arrest of a lawbreaker does not necessarily mean the officer is "on duty" as this phrase is used in R.C. 4549.14 or 4549.16 or Evid.R. 601(C).
Turning to the facts of this case, the record shows that Randolph was off duty at the time he observed appellant drive erratically. Similarly, Vismara was off duty when he observed appellant drive erratically and began following him. Randolph and Vismara were not operating a speed trap, nor did they attempt to pull appellant over using an unmarked vehicle. Rather, appellant stopped when he rear-ended another motorist's vehicle. Randolph and Vismara did not approach appellant's truck until it was stopped by appellant "of his own volition." Thereafter, both men stayed with appellant until the arrival of Officer Risk. "None of the dangers that the legislature sought to avoid were present here. Ruling [Randolph and Vismara] incompetent to be a witness under these circumstances would not further the legislative intent."Butler, 77 Ohio App.3d at 147.
Under these circumstances, Randolph and Vismara were not enforcing traffic laws as contemplated by the statutes. We therefore conclude that Randolph and Vismara were "not on duty for the purpose of enforcing traffic laws within the statutory meaning of R.C. 4549.14 or 4549.16 [or Evid.R. 601(C)]." Jacobs, 100 Ohio App.3d at 729. Accordingly, they were both competent to testify and the trial court did not err by overruling appellant's motion in limine. Appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] We note that we have affirmed the trial court's denial of appellant's motion to dismiss, but for different reasons than those set forth in the trial court's January 2000 decision and entry. A reviewing court passes only upon the correctness of the judgment, not the reasons therefor. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. Thus, an appellate court must affirm a trial court's judgment if upon review any valid grounds are found to support it. Id.