[Cite as *State v. Makuch*, 2012-Ohio-5272.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 11-COA-048 |
| JOHN MAKUCH III | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING: Appeal from the Ashland Municipal Court,
Case No. 11TRD06390


JUDGMENT: AFFIRMED


DATE OF JUDGMENT ENTRY: November 6, 2012


APPEARANCES:

For Appellant:

BRENT L. ENGLISH
M.K. Ferguson Plaza, Ste. 470
1500 West Third Street
Cleveland, OH 44113-1422

For Appellee:

DAVID M. HUNTER
ACTING ASSISTANT LAW DIRECTOR
Ashland Law Director's Office
1213 East Main St.
Ashland, OH 44805

*Delaney, J.*

{¶1}  Appellant John Makuch III appeals from the October 27, 2011 judgment entry of the Ashland Municipal Court finding him guilty of one count of speeding. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}  This case arose on September 2, 2011 as Sgt. Justin W. Cromer of the Ohio State Highway Patrol (OSHP) monitored traffic along Interstate 71 in Ashland County from an aircraft.  His attention was drawn to a vehicle that appeared to be traveling in excess of the posted 65-mile-per-hour speed limit.  Cromer clocked the speed of the vehicle through a specially-marked zone on the highway and determined its speed to be 82 miles per hour.  Cromer radioed another officer on the ground, Lt. Neff, and advised him of the vehicle's description and location.  Neff then stopped the vehicle and cited the driver, appellant, for speeding.

### *The process of monitoring traffic from the air*

{¶3}  Cromer became a trooper in 2004 and obtained the pilot specialty position in 2005; he is presently the flight safety officer for the aviation section of the OSHP.  His function as a pilot is traffic enforcement by fixed-wing aircraft.  Cromer is generally the only occupant of the aircraft, which means he is both flying the plane and monitoring traffic by the procedure described infra.  If the pilot becomes distracted by something drawing his attention inside the plane, he stops monitoring traffic, corrects the condition, and then starts over with the monitoring process.

{¶4}  Cromer testified the Ohio Department of Transportation paints certain sections of highway with a series of lines which appear as white hash marks on either

side of the interstate. These marks are spaced 1,320 feet (one quarter mile) apart. As a vehicle travels through one of these zones, a trooper uses a programmable stop watch to record the time it takes the vehicle to travel from one set of lines to the next; this is the elapsed time for the quarter-mile distance.

{¶5} Troopers then use a programmed watch to calculate an average speed based upon the elapsed time. Cromer described the process as a simple time/distance equation: "if you take a certain amount of distance and a certain amount of time over that distance, you end up with an average speed by performing a couple of simple calculations."

{¶6} Cromer also described the process of calibrating the watch used for the calculation. The first procedure verifies the timekeeping function of the watch. Once a month, two watches are checked against a signal from the atomic clock in Boulder, Colorado; the watches are started and stopped simultaneously with a two-minute time period signal. One-tenth of a second is the maximum allowable deviation between the watches and the signal. If the watch is outside this parameter, it is taken out of service.

{¶7} The second procedure verifies the mathematical function of the watch. On a daily check before and after a shift, two watches run for approximately sixteen seconds and are then compared. One-tenth of a second is the maximum allowable deviation. The times and speeds displayed on the watches are compared with a standard mathematical chart to ensure the mathematical function is working properly.

{¶8}  In addition to those checks, inside the airplane, Cromer has three stopwatches which he progressively compares against each other as another step of verifying the watches' accuracy.

{¶9}  The watches used by Cromer in this case were checked on August 16, 2011 and September 15, 2011, before and after the traffic enforcement detail described herein.  Both watches were found to be within the required parameters when measured against the atomic clock.  Both watches were subjected to Cromer's daily check on September 2, 2011, at 8:16 a.m. and 3:52 p.m. and were found to be within standards, programmed and operating correctly.

*The monitoring and stop of appellant's vehicle*

{¶10} On September 2, 2011, Cromer was operating an OSHP aircraft and monitoring traffic in a southbound zone on Interstate 71 in Ashland County, near the 188 mile post.  This is a four-quarter zone; each hash mark, measured from the front of each line, is at least 1,320 feet.  Cromer personally measured this distance with a rolling tape and confirmed the measurement with a standard fiberglass tape.

{¶11} The weather was favorable that day for monitoring traffic by aircraft and Cromer noted no obstructions or impediments between his aircraft and the ground.  At approximately 9:23 a.m. Cromer noticed a vehicle traveling southbound on I-71; his attention was drawn to the vehicle because it appeared to be traveling in excess of the posted 65-mile-per-hour speed limit.  The vehicle approached the marked zone and Cromer did not see any vehicle near it traveling faster.  He began timing the vehicle and continued to do so through all four quarters of the zone.

{¶12} Cromer described the targeted vehicle as a "darker-blue" pickup truck. In the first quarter of the zone, the average speed checked was 82 miles per hour. In the second and third quarters, the average speed was 78 miles per hour, and in the fourth quarter, the average speed was 74 miles per hour. These speeds were consistent with Cromer's visual estimation.

{¶13} Cromer radioed Neff, who was positioned on the right berm south of the speed zone, and described the vehicle and its time and speeds. He tracked the vehicle as it approached Neff, directing Neff with reference to landmarks and counting how many vehicles were between the target and Neff's vehicle.

{¶14} Neff flagged the target vehicle to the right berm, and Cromer confirmed he had stopped the right vehicle, the same one Cromer clocked traveling 82 miles per hour in a 65-mile-per-hour zone.

{¶15} Neff flagged down the blue pickup truck and directed it to pull over to the berm. Neff identified the driver of the pickup truck as appellant, advised him of the reason for the stop, and cited him for the speed violation.

*Citation, bench trial, and conviction*

{¶16} Appellant entered a plea of not guilty and the case proceeded to bench trial. Appellant moved for a judgment of acquittal at the close of appellee's evidence and at the close of all the evidence; the motions were overruled. The trial court found appellant guilty as charged and assessed a fine of $75 plus court costs.

{¶17} Appellant now appeals from the judgment entry of conviction and sentence.

{¶18} Appellant raises two Assignments of Error:

{¶19} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS UNDER CRIM.R. 29(A) AT THE CLOSE OF ALL THE EVIDENCE BECAUSE (a) THE PROSECUTION FAILED TO PROVE WITH ANY COMPETENT, CREDIBLE EVIDENCE THAT APPELLANT WAS OPERATING THE VEHICLE IN QUESTION; AND (b) WHERE THE PROSECUTION FAILED TO PROVE A PREDICATE FACT NECESSARY TO SHOW THE SPEED OF THE VEHICLE IN ANY EVENT."

{¶20} "II. THE JUDGMENT OF CONVICTION FOR SPEEDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WARRANTS A NEW TRIAL BECAUSE (a) THE PROSECUTION FAILED TO PROVE WITH COMPETENT, CREDIBLE EVIDENCE THAT APPELLANT WAS OPERATING THE VEHICLE IN QUESTION; AND (b) WHERE THE PROSECUTION FAILED TO PROVE A PREDICATE FACT NECESSARY TO SHOW THE SPEED OF THE VEHICLE IN ANY EVENT."

I., II.

{¶21} Appellant asserts his conviction for speeding is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant's two assignments of error are related and will be considered together.

{¶22} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the

syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶23} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶24} Appellant was cited with and convicted of a violation of R.C. 4511.21(D)(2), which states, "No person shall operate a motor vehicle * * * upon a street or highway as follows: [a]t a speed exceeding sixty-five miles per hour upon a freeway as provided in divisions (B)(13) and (14) of this section." Appellant challenges his conviction on two bases: insufficient evidence to identify him as the driver of the pickup truck, and insufficient evidence of the accuracy of Cromer's speed calculation. These arguments are premised upon appellant's characterization of the

OSHP witnesses' testimony as flawed, but the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), certiorari denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990).

{¶25} Appellant cross-examined the OSHP witnesses and argued the identity of the driver was not proven beyond a reasonable doubt because Neff was somewhat equivocal in his testimony: he didn't recall specifically whether anyone else was in appellant's vehicle and he only "vaguely" recalled appellant. The trial court cited *State v. Scott*, 3 Ohio App.2d 239, 244-245, 210 N.E.2d 289 (7th Dist.1965) for the proposition that "lack of positiveness" in a witness' identification of a defendant does not destroy the value of the identification, but goes to the weight of the testimony. We note Neff identified appellant in the courtroom, recalled appellant's face, and personally filled out the uniform traffic citation containing appellant's physical description. Appellee's evidence sufficiently established appellant as the driver of the vehicle. See, *State v. Calhoun*, 5th Dist. No. CA-1060, 1994 WL 66891 (Feb. 17, 1994) [trooper testified vehicle he observed from the air was same vehicle he saw another trooper stop], affirmed on other grounds by *State v. Heins*, 72 Ohio St.3d 504, 1995-Ohio-208, 651 N.E.2d 933; *State v. Roman*, 5th Dist. No. 3373, 1988 WL 119955 (Oct. 21, 1988) [trooper had "no doubt" car stopped by fellow trooper was the same car he detected speeding]; *State v. Henry*, 5th Dist. No. 07COA024, 2008-Ohio-236 [evidence as a whole established speeding vehicle was appellant's].

{¶26} Appellant also challenges appellee's evidence as to the spacing of the hash marks used in Cromer's calculations, arguing Cromer was unaware whether the

spacing had changed since he personally measured them in July 2011. We note, though, Cromer testified he had personally measured the lines with a roll tape previously and there was no apparent manipulation of the lines or spacing on the date of appellant's offense. We find the testimony as to the hash mark spacing and placement was sufficient and the trial court's findings were not against the manifest weight of the evidence. See, *State v. Swinehart*, 5th Dist. Nos. CA-1000, CA-999, 1992 WL 238405 (Aug. 27, 1992), appeal not allowed, 65 Ohio St.3d 1498, 605 N.E.2d 951 (1993); *State v. Rice*, 2nd Dist. No. 2000CA5, 2000 WL 1369924 (Sept. 22, 2000); *State v. Osting*, 3rd Dist. No. 3-86-21, 1988 WL 68698 (Jun. 27, 1988); *State v. Stockinger*, 6th Dist. No. C.A.E-87-17, 1987 WL 27589 (Dec. 11, 1987).

{¶27} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The trial court did not create a manifest injustice by concluding that appellant was guilty of speeding. The trial court heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt. We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice requiring a new trial. Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶28} Appellant's first and second assignments of error are therefore overruled and the judgment of the Ashland County Municipal Court is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


PAD:kgb

[Cite as *State v. Makuch*, 2012-Ohio-5272.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN MAKUCH III | : | |
| | : | |
| | : | Case No. 11-COA-048 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Ashland Municipal Court is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN